403 So.2d 644 (1981)
STATE of Louisiana
v.
George TOMPKINS.
No. 80-KA-2372.
Supreme Court of Louisiana.
June 22, 1981.
Rehearing Denied September 28, 1981.
*646 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., Jeanette T. Knoll, Asst. Dist. Atty., for plaintiff-appellee.
Donald R. Wilson, Gaharan & Wilson, Jena, for defendant-appellant.
LEMMON, Justice.[*]
This case involves an unfortunate incident outside of a barroom which left one man dead and resulted in a manslaughter conviction and a 15-year prison sentence for another. The primary issues raised on appeal are insufficiency of evidence, error in refusing a special jury instruction, and excessiveness of sentence.
Facts
The victim (Keller) and another barroom patron (Turner) became embroiled in an altercation at a lounge operated by defendant. The two initial antagonists went outside to fight, but Turner soon fled back inside to get a pool cue, claiming that Keller was armed with a knife. Defendant, apparently bent on disarming Keller, secured a pistol and went outside to confront him.
*647 Conflicting versions of ensuing events were presented at trial. Defendant testified that he encountered Keller outside the door, where Keller was waiting for Turner, and asked Keller to drop the knife (which all agreed was not being pointed at defendant). Defendant claimed that he was then struck from behind by a door, causing the pistol in his hand to discharge and kill Keller. Defendant thus explained the shooting as accidental and unintentional.
On the other hand, two eyewitnesses testified that defendant cocked his pistol, pointed it at Keller, advised him thrice to drop the knife, and then shot Keller dead when he failed to heed the command. After the shooting defendant turned himself in to the police and surrendered the pistol and knife.
Defendant was charged with manslaughter. The jury returned a non-unanimous verdict of guilty, obviously disbelieving defendant's assertion of an accidental shooting.
Sufficiency of Evidence
Defendant's principal argument on appeal is that the state produced insufficient evidence of the essential elements of manslaughter. He contends the state did not prove (1) that defendant had the specific intent to kill or inflict great bodily harm, (2) that defendant shot Keller without justification, or (3) that defendant committed the homicide in sudden passion or heat of blood.
The evidence, viewed in the light most favorable to the prosecution, was clearly sufficient to convince a reasonable juror beyond a reasonable doubt that defendant specifically intended to kill or to inflict great bodily harm. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Defendant's version that he accidentally shot the victim simply was not accepted by the jury, which apparently chose to believe the two witnesses who testified that defendant pointed the pistol at Keller and fired when Keller did not drop the knife. The choice not to believe defendant was one based on the resolution of conflicting testimony, and that choice cannot be upset by this court on the basis that the conflicting version constituted insufficient evidence. La.Const. Art. V, § 5(C) (1974).
As an alternative to the defense of accidental shooting, defendant asserted the defense of justification. See R.S. 14:20 and 22. These defenses are somewhat inconsistent, in that an accidental shooting will not usually occur when one undertakes to protect or defend another person. Nevertheless, defendant's own testimony defeats the defense of justification in this case.
Defendant's testimony established that Keller was outside the bar and that Turner was still inside when defendant fired the fatal shot. Furthermore, although Keller had a reputation as a dangerous person and had shortly before the shooting pulled a knife during the fight with Turner, no witness (including defendant) stated that Keller, at the time the shot was fired, was threatening to attack Turner or defendant or was taking any action which would place Turner or defendant in any apprehension of immediate attack. The uniform evidence simply showed the Keller, while Turner was inside the bar, held his knife by his side after defendant, with cocked pistol, ordered him to drop it and that defendant then shot him without further warning.
We conclude the evidence is sufficient to establish lack of justification. See State v. Patterson, 295 So.2d 792 (La.1974).
As to defendant's contention that the evidence does not establish he acted in a "heat of blood" and "sudden passion", defendant perhaps is arguing that those factors are essential elements of the crime of manslaughter.[1] Nevertheless, this court on *648 several occasions has stated that "heat of blood" and "sudden passion" are not elements of the offense of manslaughter, but rather are factors in the nature of mitigating circumstances which may reduce the grade of homicide. State v. Temple, 394 So.2d 259 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974); State v. McAllister, 366 So.2d 1340 (La.1978).
Manslaughter, under subsection (1) of R.S. 14:31, is a specific intent killing.[2] The culpable state of mind required for manslaughter under subsection (1) as an element of the offense is the specific intent to kill or inflict great bodily harm.[3] Since the evidence supports a finding of that culpable state of mind, defendant may not avail himself of any alleged lack of proof that he acted in a "sudden passion" or "heat of blood".[4]
We conclude that the evidence adequately supports the jury verdict of guilty of manslaughter.
Denial of Requested Special Instruction
Defendant also argues that the trial court erred in refusing to give a requested special instruction regarding the elements of negligent homicide.[5] See State v. Marse, 365 So.2d 1319 (La.1979).
We note first that the proposed instruction was not "wholly correct" and needed further explanation. See C.Cr.P art. 807; State v. Lovett, 359 So.2d 163 (La.1978). Defendant's instruction strongly implied that defendant could be later tried for negligent homicide or some other lesser offense following the jury's acquittal of defendant *649 on the manslaughter indictment. Defendant does not cite any authority for this implication, and his requested instruction invites jury speculation as to the effect of an acquittal on a subsequent prosecution.[6] Such matters are of no concern to the jury. It is their duty to return a verdict of not guilty (without regard to double jeopardy consequences) if the state's case fails to prove every element of the offense charged or of a lesser responsive offense.[7]
Furthermore, as in State v. Marse, above, and State v. Matthews, 380 So.2d 43 (La.1980), the trial judge in this case adequately instructed the jury regarding the elements which they must find in order to convict defendant. The judge enumerated the elements of the offense and clearly told the jury that the failure of the state to prove each and every element must result in a verdict of not guilty.[8] Thus, the instruction given was complete and accurate, and while the trial judge might have added that a finding of accidental shooting required a verdict of acquittal, the instruction emphasizing the necessity of finding an intentional shooting implicitly required a finding that the shooting was not accidental. Since the only verdicts given the jury for consideration were guilty and not guilty, it was not necessary to give defendant's requested instruction in order to convey to the jury that a finding of an accidental shooting must result in a verdict of not guilty.[9]
Defendant also argues on appeal that the trial court erred in refusing to give a requested jury instruction on justifiable homicide. However, at trial defendant failed to object to the refusal to give this requested instruction, and he cannot avail himself on appeal of any error in this respect. See C.Cr.P. art. 841; State v. Marmillion, 339 So.2d 788 (La.1976).
Defective Indictment
Defendant moved to quash the indictment on the ground that it was returned by a grand jury in which only two of the 12 jurors were black. Citing 1970 census statistics which reveal that 29% of the parish was black, defendant urges that this mathematical disparity (29% to 16% renders the grand jury panel constitutionally defective. Defendant also contends the notation of race on the cards from which the grand jury was selected.
One who challenges jury composition on the ground of racial discrimination must show that there has been a systematic *650 exclusion of a class of persons in the selection process or that the state has failed to comply with the statutory procedures for selection. State v. Western, 355 So.2d 1314 (La.1978); State v. Taylor, 347 So.2d 172 (La.1977); Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Thus, defendant has the burden of establishing a prima facie case of discrimination. State v. George, 371 So.2d 762 (La.1979). The court in George, above, further stated, at 764:
"While a defendant has a constitutional right to be indicted by a grand jury and tried by a petit jury chosen from a fair cross-section of the community, he is not entitled to juries reflecting with mathematical precision the composition of the community."
One of the members of the jury commission testified and explained the procedure by which the jury lists are compiled. Initially, the names are chosen at random from a wheel by the members of the commission. One of the five jury commissioners is black. Some 2500 card names are randomly chosen for the general jury venire lists. From this general venire list, names are pulled for the individual civil and criminal jury lists. Though the cards which are initially pulled from the wheel contain designation of race, no such notation is made on the general jury venire or at any other stage of the proceedings.
As noted by the United States Supreme Court in Alexander v. Louisiana, above, the racial designation on the name cards provides an easy opportunity for racial discrimination. See also Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). However, unlike either of the above cases, there is no evidence presented to suggest that discrimination actually occurred. In Alexander the race notation appeared at each crucial stage of the selection process, and statistics showed that at each stage the percentage of negroes chosen was drastically reduced. In Avery no such statistics were presented, but no negroes sat on the final jury. In the instant case two of the grand jurors were black. No evidence was presented establishing the number of blacks chosen for the general jury venire list or the grand jury venire from which this particular grand jury was chosen, and there was no showing that individuals were excluded from these lists because of race. Thus, the trial court did not err in denying the motion to quash.
Excessive Sentence
Taking a human life without justification, even if provoked, is a very serious matter. Although the victim was hardly blameless regarding the events of the evening, the jury found that defendant unlawfully took his life. Nevertheless, the sentence imposed here was "apparently severe", as we have construed that concept in State v. Jones, 381 So.2d 416 (La.1980), and this court has demanded adherence to C.Cr.P. art. 894.1's sentencing guidelines when the sentence is apparently severe.
At the sentencing hearing in this case the trial court merely named two aggravating circumstances, without stating the factual basis for his conclusions as required by C.Cr.P. art. 894.1 C, and did not even mention any consideration of possible mitigating circumstances, many of which appear in the record or the presentence investigation report.[10] Since there is not an adequate record for appellate review, the sentence must be vacated and the case remanded for resentencing.
Decree
The conviction is affirmed, but the sentence is vacated for non-compliance with C.Cr.P. art. 894.1, and the case is remanded for resentencing.
DENNIS, J., concurs.
*651 CALOGERO, Justice, concurring in rehearing denial.
Relator's application for rehearing is without merit. The conviction was properly affirmed.
The majority opinion, however, is mistaken insofar as it suggests that double jeopardy would bar reprosecution for negligent homicide and insofar as it relies on State v. Stanford, 15 So.2d 817 (La.1943) in that regard.
Double jeopardy does not bar reprosecution for negligent homicide after an acquittal for manslaughter. "[E]ach provision requires proof of a fact which the other does not..." Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin and Jasper E. Jones of the Second Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] The jury was instructed that the state had to prove that defendant acted with specific intent to kill or inflict great bodily harm and that the killing was committed in sudden passion or heat of blood. The jury, by virtue of the guilty verdict, apparently found these factors proved beyond a reasonable doubt. See State v. Byrd, 385 So.2d 248 (La.1980). That finding is reasonably supported by the evidence. Although defendant denied that anger played any part in a conscious decision to shoot Keller, the prosecution directed the jury's attention to the victim's boisterous, pugnacious misbehavior at the lounge (both the day of the shooting and two days earlier), and the jury could reasonably have found that such conduct provoked defendant into an impatient rage toward his unruly customer.
[2] The judge, without objection by the state or the defense, instructed the jury concerning only this section of the statute, mentioning that the other section was not applicable in this case. R.S. 14:31(1) provides:

"Manslaughter is:
"(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed".
[3] External circumstances constituting "provocation sufficient to deprive an average person of his self control and cool reflection" may be responsible for generating a specific intent to kill or inflict great bodily harm. That degree of provocation may reduce the homicide to manslaughter if the culpable state of mind arises while the sudden passion is still in effect.
[4] Moreover, R.S. 14:5 provides that "[a]n offender who commits an offense which includes all the elements of other lesser offenses, may be ... convicted of one of the lesser and included offenses". The redactors' comment states that "it should never be a defense for an offender to assert that an added criminal element was present, making him guilty of a more serious crime." Any contention by defendant that evidence of a "cold blooded" killing can be a defense to manslaughter, because he is guilty of the more serious crime of second degree murder (which was then defined as a killing in which the offender acted with a specific intent to kill or inflict great bodily harm), seems contrary to the redactors' intent. See State v. Malmay, 24 So.2d 869 (La.1946), in which this court rejected defendant's contention that his negligent homicide conviction must be set aside because the evidence showed that he intentionally struck the victim with a fatal blow.
[5] The instruction submitted was as follows:

"Negligent homicide is defined as homicide resulting from the criminal negligence of the defendant. Criminal negligence under Louisiana law exists when although neither specific nor general intent is present, there is such disregard of the intereset [sic] of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably caregul [sic] man under like circumstances.
"While negligent homicide is classified under Louisiana law as a grade of criminal homicide, it is not a responsive verdict to this indictment. Therefore, I charge you that if you, the jury, conclude that the defendant's conduct amounts to no more than criminal negligence, you must acquit the defendant. If you do so acquit, the prosecutor may, in his discretion, take this matter up at another time and place, before another jury."
[6] An acquittal bars prosecution for lesser and included offenses, whether responsive or not. C.Cr.P. art. 596(1).
[7] Negligent homicide is a lesser grade of the offense of manslaughter, even though it is not legislatively responsive. C.Cr.P. art. 814 does not list negligent homicide as a verdict responsive to manslaughter, but prior to the enactment of C.Cr.P. art. 814 (and its predecessor R.S. 15:386) negligent homicide was held to be a responsive, lesser grade of the offenses of murder and manslaughter. See R.S. 14:5, official revision comment; State v. Stanford, 15 So.2d 817 (La.1943).
[8] See Louisiana Judges Benchbook, Vol. II, Jury Instructions-Criminal, Manslaughter (La. Judicial College 1978).
[9] The trial court did not err in refusing to read the proposed instruction for the reasons stated. However, there is an additional problem not presented here. The state prosecuted the case on the theory that defendant committed manslaughter under R.S. 14:31(1), a specific intent killing in the heat of passion. The jury instructions and argument of counsel focused attention on whether the shooting was intentional or accidental. However, some "accidental" (i. e., unintended) killings may be manslaughter under R.S. 14:31(2), if the killing is committed during the perpetration or attempted perpetration of certain felonies or an intentional misdemeanor directly affecting the person. Thus, for example, if a defendant assaults his victim and accidentally kills him, he is guilty of manslaughter (even though he did not intend to produce the criminal consequence of death). See State v. Statum, 390 So.2d 886 (La.1980) (Lemmon, J., concurring).

In a case in which the "misdemeanor" or "felony" manslaughter provisions of R.S. 14:31(2) are relied on by the state, a requested negligent homicide instruction should be approached with great caution, because such an instruction may not accurately advise the jury of the law applicable to the case. Presumably the sound admonitions of State v. Marse, above, and State v. Matthews, above, would not be applicable in such case.
[10] Mitigating circumstances urged by the 41-year old defendant include lack of prior criminal record, prior good work record (he held jobs as a janitor and bartender and also farmed 10 acres), and family responsibility for wife and four minor children, as well as an abandoned niece and a retarded brother whom he supports. Defendant also pointed out that the victim was armed and had displayed provocation and aggressive conduct.