Earnest KNIGHTON, Jr.,
Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary,
Respondent-Appellee.

No. 84–4490.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1984.

Stay and Certiorari Denied Oct. 15, 1984.
See 105 S.Ct. 306.

---

2. These quotations obviously are not all in complete context.

**1346**

Murray, Murray, Braden, Landry & Gonzalez, Julian R. Murray, Jr., Joe Morris Doss, New Orleans, La., for petitioner-appellant.

Henry N. Brown, Jr., Dist. Atty., Benton, La., for respondent-appellee.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

Earnest Knighton, Jr., a death-sentenced state prisoner, seeks habeas corpus relief, 28 U.S.C. § 2254, from his execution scheduled for the early morning hours of Wednesday, September 5, 1984. Treating his notice of appeal from the trial court's judgment denying such relief as a request for a certificate of probable cause, Fed.R. App.P. 22, there is presently before the court Knighton's motion to proceed in forma pauperis, his application for certificate of probable cause and his application for stay of execution. These issues, and the merits, have been fully briefed by the parties. Extended oral argument was received on August 21, 1984. Concluding that there is insufficient basis for issuance of the Great Writ, finding no "substantial showing of the denial of [a] federal right," *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983), we grant the motion for pauper status but deny the applications for stay of execution and for certificate of probable cause.

*Background Facts*

On April 15, 1981 Knighton was indicted for first degree murder, La.R.S. 14:30, by a grand jury in Bossier Parish, Louisiana. On June 26, 1981, upon completion of the guilt phase of a bifurcated trial, the 12 jurors returned a unanimous verdict of guilty. The proceeding continued with the sentencing phase, La.C.Cr.P. art. 905 *et seq.,* and later that same day the jury unanimously recommended the death penalty, finding two aggravating circumstances:

death of the victim during the course of an armed robbery and the knowing creation of the risk of death or great bodily harm to more than one person. La.C.Cr.P. art. 905.4(a), (d). The trial judge sentenced Knighton to death by electrocution. The Supreme Court of Louisiana affirmed the conviction and sentence, finding no merit in more than 35 assignments of error. *State v. Knighton,* 436 So.2d 1141 (La.1983). As mandated by state law, La.R.S. 15:567, the state trial court issued the death warrant and Knighton's execution was set for December 7, 1983. The Chief Justice of the Louisiana Supreme Court stayed that execution pending Knighton's application for certiorari to the United States Supreme Court. That application was denied on February 21, 1984 and the state trial court again scheduled the execution, this time for April 5, 1984. Knighton then unsuccessfully sought state habeas relief. Those applications were denied summarily without evidentiary hearing by the state trial court on March 22, 1984 and by the state supreme court on March 23, 1984.

Invoking 28 U.S.C. § 2254, on March 24, 1984, Knighton sought a stay of execution and other habeas surcease in a petition filed in the district court, alleging that his trial was constitutionally infirm because he had: (1) not received the effective assistance of counsel; (2) been denied due process by the court's refusal to grant a continuance upon the severance of a co-defendant; (3) suffered a constitutional deprivation when his counsel failed to appeal the court's limitation on closing argument in the penalty phase; (4) been denied due process by use of a Witherspoon "death qualified" jury; and (5) been denied his eighth amendment rights in violation of the teachings of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

On March 30, 1984 the district court *a qua* stayed the scheduled execution, dismissed with prejudice the foregoing enumerated claims 2, 4, and 5 and docketed an evidentiary hearing on claims 1 and 3. Upon conclusion of that hearing, the dis-

trict court rejected all claims and vacated its stay. Subsequently, the district court denied Knighton's request for IFP and CPC and declined to extend the stay pending appeal.

For the third time, the state trial judge issued the death warrant, setting the execution for September 5, 1984. That execution pends. Knighton noticed his appeal. Because the district court denied Knighton's application for a certificate of probable cause, we considered the notice of appeal as a request to this court for such a CPC. Fed.R.App.P. 22. Consistent therewith, and in accordance with this court's Local Rule 8 governing the procedure for expeditious handling of requests for stays of state court judgments, we ordered oral argument on all aspects of Knighton's appeal for August 21, 1984. Our clerk outlined an appropriate briefing schedule which counsel found acceptable and honored. Unlimited oral argument was granted. The matter is thus submitted on briefs and oral argument.

### Analysis

While preserving all issues raised in brief, the principal issue Knighton advanced in oral argument is the claimed denial of his sixth amendment right to the effective assistance of counsel during the penalty phase of his trial. Specifically, Knighton maintains that his court-appointed counsel failed to investigate and prepare adequately for the penalty aspect of the trial and this failure rose to constitutional proportions. Our review of the state court records and the record of the federal proceedings, in light of the teachings of *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), results in a contrary conclusion. *See Moore v. Maggio,* 740 F.2d 308 (5th Cir.1984).

Knighton argues that his attorney, S. Patrick Phillips, chief counsel for the Indigent Defender Board for the Twenty-sixth Judicial District, Bossier Parish, Louisiana, totally failed to investigate all matters relevant to the sentencing hearing. Knighton contends that Phillips did not seek out and

interview witnesses who might have humanized him before the jury, witnesses such as family members, acquaintances and childhood friends. Defense counsel is also faulted for failing adequately to investigate Knighton's prior criminal record with an eye toward minimizing its adverse impact. It is Knighton's position that Phillips undertook no preparation whatever, with respect to the sentencing hearing, and therefore his method of handling the punishment phase may not be considered the result of strategic or tactical decisions. The evidence, and the reasonable references to be drawn therefrom, does not support this conclusion.

### The District Court's Findings and Conclusions

The district court found that at the time of Knighton's trial Phillips had 15 years of trial experience, the last ten of which were devoted almost exclusively to a criminal law practice. As chief counsel for the local indigent defender program, Phillips, assisted by another attorney and supported by a full-time investigator and a secretary, was assigned between 20 and 40 felony cases a month. In the ten years prior to 1981, Phillips had been trial counsel in at least 50 felony jury trials, in many of which he opposed the district attorney who prosecuted Knighton. In the six months immediately preceding the Knighton trial, Phillips' trial schedule eased and he tried only one felony jury case.

The district court found that Phillips conferred with Knighton on six to eight occasions for a total of six hours. Knighton consistently maintained his innocence. He insisted that he had a valid alibi defense and he furnished Phillips with the names of two witnesses, Robert Williams and Wanda Smith, who purportedly would support that alibi. Phillips had no reason to disbelieve Knighton and structured the defense accordingly. Unable to locate Williams and Smith, Phillips caused subpoenas to issue in the hope and expectation that the sheriff would have more success in finding these witnesses.

The district court further found that Phillips was assisted in Knighton's defense by Steven Cowel, an attorney who had previously represented Knighton's mother. Initially Cowel was to undertake the representation of Knighton, but the fee could not be arranged. Nonetheless, Cowel assisted Phillips in the pretrial investigation and in preparation for trial. Cowel attempted to locate the alibi witnesses and was in communication with Knighton's mother and perhaps other members of the family. Phillips and Cowel discussed the possibility of character witnesses, but Phillips decided against calling such witnesses because of Knighton's prior criminal record and because Knighton had only recently returned to the Shreveport-Bossier City area. This decision was briefly discussed with Cowel, who had copies of Knighton's prior criminal record which had been furnished by the state, including Knighton's "rap" sheet and evidence of two convictions in California. Knighton had been convicted of robbery and had received a sentence of one year to life. He also had been convicted of grand theft auto and given a concurrent sentence.

Approximately one week before Knighton's trial Phillips was appointed to represent a man named Robert Williams who turned out to be Knighton's missing alibi witness. Unfortunately for Knighton, it developed that Williams had been arrested for his involvement in the Knighton armed robbery/murder offense. Phillips' continuing efforts to locate Wanda Smith before trial were unsuccessful. Phillips finally met this alibi witness—the one Knighton insisted would clear him—when the prosecutor brought her to the witness stand as one of the state's principal witnesses against Knighton. Phillips' assessment was that Smith "turned out to be the single most damaging witness to Earnest Knighton's case." Williams also testified for the state and, as Phillips observed: "the two witnesses most devastating were the two I had subpoenaed."

There is no question about or challenge to Phillips' performance in the guilt phase. Despite the distress caused by the adverse testimony provided by Knighton's supposed star witnesses, Phillips performed with a high degree of skill and competence and vigorously put the state to the test of proving the elements of the offense. As the trial court found, "Phillips diligently attempted to establish that Knighton lacked the requisite intent to commit the crime." Knighton did not testify.

The offering of evidence in the guilt phase ended on June 25, 1981. Closing arguments were had on the morning of June 26. After charge and deliberation, the jury returned a unanimous verdict of guilty of first degree murder. After a recess of approximately one hour, the trial resumed for the sentencing hearing required by Louisiana law in capital cases. La.C.Cr.P. art. 905. The prosecutor buttressed the evidence offered in the guilt phase by offering evidence of the two California convictions. Phillips offered no evidence but sought to minimize the seriousness of the California convictions. Phillips testified at the evidentiary hearing that he did not present character-type evidence because he did not wish to give the prosecutor an opportunity to repeatedly emphasize the California convictions or provide the prosecutor with an opportunity to explore Knighton's difficulties resulting from drug and alcohol abuse. Phillips made the value judgment that the gain to be expected from the favorable testimony of family and friends would not justify the risk of the potential harm from the unfavorable testimony expected on cross-examination. Phillips' years of experience trying cases against Knighton's prosecutor convinced him that the district attorney would forcefully use that evidence in seeking the death penalty. The district court found that "Phillips concluded that his best chance for obtaining a favorable sentence verdict would lie in a plea for Knighton's life during closing argument," and that he made such a plea.

These findings by the district court are supported by the record. None may be said to be clearly erroneous. Fed.R.Civ.P. 52(a).

Effective Assistance of Counsel—the
Standard

In concluding that Knighton received the effective assistance of counsel, the district court applied the letter and rationale of *Strickland v. Washington* in which the Supreme Court announced a dual burden for a petitioner who seeks reversal of a conviction on this basis. The Court declared:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

104 S.Ct. at 2064.

The Supreme Court noted that the sixth amendment assures a defendant "reasonably effective assistance," Id., gauged by "an objective standard of reasonableness," which "remains simply reasonableness under prevailing professional norms." Id. at 2065. Cautioning that the prevailing norms of practice are to be used as guides only, the Court underscored the limitations on judicial review of attorney performance:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf.*,

*Engle v. Isaac,* 456 U.S. 107, 133–34 [102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. New York* [350 U.S. 91 (1955)] at 101 [76 S.Ct. 158 at 164].

Id. 104 S.Ct. at 2065–66.

■ Once professionally unreasonable errors are established, to prevail under the dual-pronged test of *Strickland v. Washington,* a petitioner must then "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068. The essential "question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 2069. In this context "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 2068.

Trial Counsel's Error

■ One claiming ineffective assistance of counsel must identify specific acts or omissions; general statements and conclusionary charges will not suffice. The particular professional failure must be pled and proven. Knighton challenges Phillips' failure to investigate, categorizing Phillips' actions as a total failure in that regard. The Supreme Court addressed the question

of counsel's investigation in the context of an ineffectiveness challenge and held that

> counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Id. at 2066.

■ Knighton maintains that Phillips could not make a valid strategic choice because he had made no investigation whatsoever relevant to the punishment phase. Accordingly, Knighton denigrates Phillips' professional decisions as being made in a factual vacuum. If this contention were supported by the record, the sixth amendment standard would not have been met and Knighton would be entitled to relief. But we do not find such to be the case.

The Supreme Court mandates the obvious; we "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 2066. In doing so, we must determine whether Phillips acted in a factual void in an unjustified manner. We conclude that he did not.

■ Phillips was an experienced criminal trial attorney, familiar with the local scene, local authorities and local juries. Before trial, he spent up to six hours interviewing and conferring with Knighton who consistently voiced his innocence and insisted that two witnesses, whose names he provided, would establish an alibi defense. When Phillips sought to discuss the punishment phase with him, Knighton brushed over his comment lightly and returned to his protestations of innocence. The defendant's attitude and actions, as they affect the direction of the pretrial investigation and preparation, are relevant to our evaluation of counsel's performance. Steven Cowel, an older attorney, was asked to represent Knighton and would have done so if the fee arrangement had been made. Cowel had previously represented Knighton's mother and knew something of the family. Cowel was in contact with Knighton's mother and, Phillips believed, with other members of Knighton's family. Phillips gave Cowel copies of Knighton's prior criminal record which the state had furnished in response to Phillips' pretrial motions. Phillips and Cowel discussed this criminal record and the possibility of using character witnesses in mitigation. Phillips had a feel for the strength of the state's case and was very familiar with the district attorney and his methodology of prosecution. Phillips was convinced that if he gave the prosecutor an opportunity, the prosecutor would "hammer home" repeatedly the earlier convictions and would raise the spectre of Knighton's other difficulties with "the law" including drugs and alcohol abuse. The offering of character-type evidence would open that door for the prosecutor. In this setting, Phillips determined to forego the potential good that might flow from the testimony of family and friends in mitigation of punishment, and opted instead to attempt to downplay the prior record and to plead for Knighton's life, basing that plea in part on an appeal to the jury that another death was not the answer and that life imprisonment provided an adequate measure of punishment. From the foregoing, we conclude that it is not correct to say that Phillips made no investigation whatever and that he acted in a factual vacuum. Nor are we prepared to say that his professional performance fell below the constitutional threshold.

### Prejudice

The second prong of *Strickland v. Washington* requires a consideration of the effect of the professional errors. Because of our conclusion that Phillips' performance as defense counsel was not constitutionally inadequate we need not reach this issue. We merely note in passing that considering the totality of the evidence in this case, and with due regard for the expected cross-examination and possible rebuttal evidence by the state, it was not likely that laudatory

words from family and friends would have changed the jury's sentencing verdict.

### Limitation on Closing Argument

■ The evidentiary hearing also considered Knighton's claim that Phillips was ineffective because he failed to preserve an objection to a limitation the state trial court imposed during closing argument. There is no merit to this contention. Whether Phillips properly preserved the issue for appellate review is a purely academic inquiry. The Louisiana Supreme Court specifically addressed that issue in assignment of error number 29, *State v. Knighton*, 436 So.2d at 1155–56. Not only did Louisiana's highest court consider the matter, but as that court noted, Phillips made the desired statement twice. In neither instance did the trial court admonish the jury to disregard counsel's remarks. The point was made for the jury. There was neither failure by counsel nor prejudice.

### Refusal of Continuance

■ Knighton's counsel candidly acknowledge that a ruling involving the grant or refusal of a continuance is addressed to the sound discretion of the trial court and rarely reaches constitutional proportions. The issue of a two-day continuance after the severance of a co-defendant was raised on direct appeal. The Louisiana Supreme Court found no prejudice. Nor do we. Knighton's efforts to weave this thread into the sixth amendment ineffectiveness fabric are not persuasive. Nor are we persuaded that the issue implicates due process.

### Witherspoon v. Illinois

■ Knighton contends that his right to a fair trial by an impartial jury was violated when he was tried by a jury qualified under the requirements of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). It is suggested that Witherspoon's underpinnings have been eroded by the decisions in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Gregg v. Georgia*, 428 U.S. 153, 238, 96 S.Ct. 2909, 2976, 49 L.Ed.2d 859 (1976), which oblige a bifurcated trial, separating the determination of guilt from the decision on punishment. Counsel for Knighton suggests the possibility of allowing Witherspoon disqualified jurors to serve on guilt phase juries. Counsel further suggests that scientific and empirical data are now available to support the conclusion that limiting guilt phase juries to "death qualified" jurors denies a defendant a jury chosen from a fair cross section of the community. In support of this argument, counsel cites two district court decisions, *Keeten v. Garrison*, 578 F.Supp. 1164 (W.D.N.C.1984), and *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D. Ark.1983). The argument is not to be gracelessly ignored, but it must be directed to other fora, legislative and judicial. It is not for this court, at this time, in this setting, to plow that legal furrow.

### Eighth Amendment

Knighton next argues that his eighth amendment rights were violated because the jury found two aggravating factors, including a finding that Knighton "knowingly created a risk of death or great bodily harm to more than one person." Knighton maintains that there was no evidence to support the finding of this aggravating factor. The Louisiana Supreme Court found it unnecessary to decide this issue, 436 So.2d at 1159, stating that "[i]f the jury finds more than one statutory aggravating circumstance and one is clearly supported by the record, the sentence need not be overturned because one of the additional aggravating circumstances is not supported." In such an instance it was "unnecessary to determine whether the jury erred in finding that defendant created a risk to more than one person." Id.

■ Knighton argues that this position of the Louisiana Supreme Court is contrary to the eighth amendment, as elucidated in *Furman v. Georgia* and *Gregg v. Georgia*. We do not agree. In *Zant v. Stephens*, 462 U.S. 862, ——, 103 S.Ct. 2733, 2746, 77 L.Ed.2d 235, 254 (1983), the Supreme Court observed that "a death sentence supported by at least one valid aggravating circumstance need not be set aside ... simply because another aggravating circumstance

is 'invalid' in the sense that it is insufficient by itself to support the death penalty." The Supreme Court of Louisiana, like its Georgia counterpart, examines the death penalty to assure that it is not excessive, La.C.Cr.P. art. 905.9. This review was deemed important and underscored in *Zant v. Stephens*. In implementation of this Code of Criminal Procedure provision, the Louisiana Supreme Court adopted its Rule 28 which provides in pertinent part:

> Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
>
> (a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
>
> (b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
>
> (c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

The Louisiana Supreme Court made its capital sentence review as prescribed, 436 So.2d at 1157–61, and upheld the conviction and sentence. We perceive no constitutional inadequacy in the application of Louisiana law in this instance. There is nothing in this record to support the charge that the jury acted arbitrarily or capriciously or without adequate guidance in its imposition of the death penalty.

### Proportionality Review

■ Knighton next contends that the proportionality review by the Louisiana Supreme Court was faulty. Specifically, Knighton argues "that his sentence of death was constitutionally disproportionate to the sentence which other defendants in Bossier Parish and throughout the State of Louisiana received for similar crimes, and is disproportionate to sentences which defendants receive in more egregious circumstances." Although arguably sound, the record before us does not contain the basis for the reversal sought by Knighton. As to the constitutional dimensions of the proportionality issue, *see Pulley v. Harris*, —

U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Finally, we decline to accept Knighton's argument that only a proportionality review made on a statewide basis can pass constitutional muster. A review based on a smaller geographic area is not constitutionally disallowed.

### In Forma Pauperis

The final point raised on appeal is Knighton's claim that he is entitled to proceed in forma pauperis and that the trial court erred in denying this status. We agree and grant pauper status.

As a final observation we are constrained to recognize, and express our appreciation for, the quality of legal representation furnished by Knighton's volunteer counsel in these habeas proceedings. Their professional performance has been consistent with the finest traditions of legal representation and does honor to these two lawyers and the entire legal profession.

Motion for leave to proceed in forma pauperis is GRANTED. Application for stay of execution is DENIED. Application for a certificate of probable cause is DENIED. The judgment of the district court is AFFIRMED.