504 So.2d 853 (1987)
STATE of Louisiana
v.
George CALDWELL.
No. 86-K-1889.
Supreme Court of Louisiana.
April 6, 1987.
*854 Patrick Harrington, Shreveport, for applicant.
William J. Guste, Jr., Atty. Gen., Paul Carmouche, Dist. Atty., Catherine Estopinal, Tommy Johnson, Asst. Dist. Attys., for respondent.
WATSON, Justice.
After being charged with three counts of distribution of marijuana, defendant George Caldwell was convicted on one count of attempted distribution. LSA-R.S. 40:966(A); 14:27.[1] Caldwell was fined $500 or sixty days in parish jail. In addition, he was sentenced to two years at hard labor, suspended, and placed on supervised probation for two years. The conviction was affirmed,[2] and a writ was granted to consider the judgment.[3]

FACTS
Before his arrest, George Caldwell, a black man, had worked fourteen years for the Caddo Levee Board. Having attained the rank of foreman, he was due for a promotion into what had been an all-white supervisory position. However, Caldwell testified there was racial opposition to such a promotion from the Levee Board's management. Perry Sweet, the person to whom Caldwell allegedly sold marijuana on two occasions, had worked for the Levee Board for seven years. Sweet had ridden to work with Caldwell, and Caldwell occasionally repaired Sweet's van.
Perry Sweet decided in October of 1984 that Caldwell would sell him marijuana. Sweet had never known Caldwell to smoke or sell marijuana, but Sweet "wanted to see if he was selling it"[4] and "wanted to get the marijuana off the street."[5] Once he became aware of Caldwell's willingness to sell, Sweet contacted the Caddo Parish Sheriff's Department. Sweet agreed to act as an informant and was subsequently paid $20 for each transaction in which he participated.
The facts of the three alleged sales are sharply disputed. On October 26, 1984, Caldwell and a friend picked Sweet up at the H.M. Downs Park in Caldwell's vehicle. According to the state, a sale of marijuana occurred during the subsequent drive. Caldwell denied a sale and asserted that they left the park merely to assist Sweet, whose van was stuck in the mud.
On November 2, 1984, in Belcher, Louisiana, Caldwell allegedly sold marijuana to an undercover narcotics officer, Melvin Ashley, who was accompanied by Sweet. While Caldwell admitted that he handed *855 the officer marijuana from his car, he claimed he acted on behalf of Sweet. Caldwell was convicted of attempted distribution on this count.
On November 30, 1984, the state claimed Caldwell sold marijuana to Sweet in Sweet's van while it was parked at a gas station. Caldwell claimed he was in the van to make adjustments to the carburetor, and the money found on him was given to him by Sweet to pay a debt. Caldwell was arrested at the scene.
While out on bond, Caldwell was told by a fellow Levee Board employee, Alfacgo Braden, that the Levee Board's management had been trying to set him up. Braden said he was approached at a Thanksgiving party by Lloyd Patton, the third ranking man at the Levee Board. Braden was assured a higher paying job operating a piece of heavy equipment if he would help Patton "get a conviction against George in a week."[6] Braden's understanding of the conversation with Patton was "that he wanted me to set George up for something and get rid of him for some reason. He didn't go into any type of detail or anything like that."[7] Braden refused to cooperate with Patton. Braden also corroborated the bias against promoting black employees at the Levee Board. All of Braden's testimony was excluded as irrelevant by the trial court and was preserved by a proffer.
As rebuttal evidence, the state introduced a tape recording made at the time of the first alleged sale to bolster Sweet's testimony and to rebut Caldwell's claim that no marijuana passed between them. Defense counsel objected, claiming it was unaware of the tape's existence and that the poor sound quality of the tape rendered it inadmissible.[8] The trial judge allowed the jury to listen to the recording and to follow along on a transcript prepared by the sheriff's office.
Evidently the jury was not impressed by either the tape recording or the credibility of state informant Sweet, because it found Caldwell not guilty of the two alleged sales to Sweet. Caldwell was found guilty of attempted distribution of marijuana only on the charge involving officer Ashley.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
Defendant contends the trial court erred in excluding Braden's testimony on the ground of relevance, thereby denying him his constitutional rights to a fair trial, due process, and witnesses in his defense.
Relevant evidence is defined in LSA-R.S. 15:441.[9] The determination is made by the standards of logic and experience. State v. Whittaker, 463 So.2d 1270 (La., 1985); State v. Davenport, 445 So.2d 1190 (La., 1984). "So long as the proffered evidence has a tendency to make a consequential fact more or less probable, the `logical' relevancy test is satisfied. Our statutes require that evidence must be relevant to a `material issue', La.R.S. 15:435, but that evidence which `explain[s] a relevant fact' or `support[s] an inference' therefrom is admissible...." State v. Ludwig, 423 So.2d 1073 at 1078 (La., 1982).
At trial, defense counsel attempted to show that Sweet's actions were prompted by orders from the management of the Levee Board, and that Caldwell was entrapped. On cross-examination, Sweet admitted he told defense counsel that Newsome, a Levee Board supervisor, had said he wanted Caldwell fired. In that same conversation, Sweet also indicated he was afraid of losing his job at the Levee Board because of talking to defense counsel. At trial, Sweet discounted these statements, *856 saying he had not been under oath and his comments were based on second hand hearsay.
Sheriff Golden testified that his office had received inquiries as to the disposition of the case from the Levee Board's management. Sweet testified that on at least one occasion, communication between him and the sheriff's office was by a telephone located in Newsome's office while Newsome was present. Caldwell testified to a poor relationship with Newsome. Caldwell said Sweet and Patton acted strangely at the Levee Board offices on the day he was arrested. Sweet remained in the office instead of being out at work. Both were nervous when Caldwell was present, and Patton sent Caldwell out to work at 4:10 P.M., an unusually late hour.
Braden's testimony was offered to show that certain members of the Levee Board's management were willing to go beyond the bounds of the law in terminating Caldwell, which was crucial to the defense theory of entrapment. Even though the attempted recruitment of Braden occurred after two of the alleged sales, the jury may have inferred that members of the Levee Board's management had embarked on a vendetta against Caldwell.
Even relevant evidence may be excluded if it would be too time consuming or would unnecessarily confuse or excite the emotions of the jury. State v. Ludwig, supra, at 1078; State v. Moore, 278 So.2d 781 (La., 1973). Here, Braden's testimony included the fact that Caldwell was suspected of stealing certain supplies belonging to the Levee Board. The trial court reasoned that this would confuse and prejudice the jury. However, defense counsel had already elicited this information on cross-examination of Sweet and brought it out again in direct examination of Caldwell. The defense made a conscious, tactical choice to reveal this evidence. Thus, the prejudicial effect would have been slight, as similar testimony was already before the jury.
State v. Constantine, 364 So.2d 1011 (La., 1978), states:
"Matters which are, ... logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses." 364 So.2d at 1014.
The determination of relevance lies within the discretion of the trial judge and should not be disturbed absent a clear abuse of discretion. State v. Whittaker, supra; State v. Rault, 445 So.2d 1203 (La., 1984), cert. den. 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984); State v. Watson, 449 So.2d 1321 (La., 1984), cert. den. 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1984). Here, the testimony was relevant to the crucial issue of whether Caldwell committed the charged offenses. See State v. Shoemaker, 500 So.2d 385 (La., 1987). The ruling of the trial court excluding this testimony was an abuse of discretion, which requires that the conviction be reversed.

DECREE
Because the trial court committed reversible error in excluding the testimony of Alfacgo Braden, the conviction and sentence of defendant, George Caldwell, are reversed.
REVERSED.
NOTES
[1] LSA-R.S. 40:966(A) provides:

"A. Manufacture; Distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
"(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I;
"(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classifed in Schedule I."
LSA-R.S. 14:27 states:
"A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
* * * * * *
"C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. * * *"
[2] 493 So.2d 749 (La.App. 2 Cir., 1986).
[3] 499 So.2d 79 (La., 1987).
[4] Tr., Vol. 1, p. 82.
[5] Tr., Vol. 1, p. 45.
[6] Tr., Vol. 2, p. 193.
[7] Tr., Vol. 2, p. 197.
[8] Because other assignments require reversal of the conviction, the assignments relating to these issues are pretermitted.
[9] LSA-R.S. 15:441 provides:

"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
"Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."