583 So.2d 67 (1991)
STATE of Louisiana, Appellee,
v.
Howard Eugene MYERS, Appellant.
No. 22500-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
Writ Denied September 27, 1991.
*68 Herman L. Lawson, Joseph D. Toups, Jr., Mansfield, for appellant.
William J. Guste, Jr., Atty. Gen., Don R. Burkett, Dist. Atty., Mansfield, for appellee.
Before HIGHTOWER, BROWN and STEWART, JJ.
STEWART, Judge.
The defendant, Howard Eugene Myers, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1. The defendant was found guilty of second degree murder by a 12 member jury and sentenced by the court to life imprisonment, without benefit of probation, parole, or suspension of sentence. He appeals his conviction and sentence and assigns as error that the trial court denied him the right to present a defense, denied him the right to ask leading questions, and overruled his motion for new trial. We affirm.

FACTS
On September 7, 1989, Peggy Bissell was dating John Gates. Peggy Bissell had dated the defendant off and on prior to this date. John Gates went to the home of Peggy Bissell at approximately 10:00 p.m. on September 7, 1989 and visited with Ms. Bissell, her son, and guests. Later he watched television with Ms. Bissell and her son. Gates left the Bissell home at approximately 12:00 a.m. on September 8, 1989. Ms. Bissell accompanied him to the door and watched Gates open the door of his truck. She stepped back inside and heard a shot as she closed the door. Ms. Bissell opened the door and saw the defendant, Howard Eugene Myers, stepping over the body of Gates. The defendant then raised *69 the gun toward Ms. Bissell and walked to the back of Gates' truck. Ms. Bissell's son got her back inside the house and they called the police. The police arrived and searched inside and outside the house. The defendant turned himself in and confessed to the shooting. The shotgun he brought with him to the police was matched to the bullets which killed the victim.

ADMISSIBILITY OF TESTIMONY

Assignments of Error Nos. 1-3
The defendant asserts that the trial court prevented his presentation of a defense by disallowing testimony about the defendant's relationship with John Gates and Peggy Bissell prior to September 7 and 8, 1989, the dates first established by the state. The defendant alleges that the trial court's exclusion of the prior relationship testimony prevented him from presenting a defense of self-defense or a defense which could have lessened his criminal responsibility to manslaughter.
An opportunity to be heard, an essential component of procedural fairness, would be an empty one if the state were permitted to exclude competent reliable evidence. State v. Weiland, 505 So.2d 702 (La.1987). The trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Burrell, 561 So.2d 692 (La.1990) at 708; State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988). Error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel. LSA-C.E. Art. 103 A(2).
Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. Art. 401. The determination of whether evidence is relevant is made by the standards of logic and experience. State v. Caldwell, 504 So.2d 853 (La.1987). Even relevant evidence may be excluded if it would be too time consuming or would unnecessarily confuse or excite the emotions of the jury. Id. Evidence which is not relevant is not admissible. LSA-C.E. Art. 402.
As stated in LSA-R.S. 14:20:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
LSA-R.S. 14:31 defines manslaughter as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
(emphasis added). "Sudden passion" and "heat of blood" are mitigating circumstances which may reduce the grade of homicide. State v. Tompkins, 403 So.2d 644 (La.1981). Because the question of provocation is one of fact, the jury must determine whether the offender's blood had actually cooled or whether the average person's blood would have cooled. Id.
The trial court's ruling excluded the prior relationship testimony as irrelevant. In Caldwell, supra, and Weiland, supra, the respective defendants assigned as error that the trial court ruling which excluded testimony prevented the defendant from presenting a defense. The Louisiana Supreme Court found reversible error where the trial court excluded testimony which was relevant to the crucial issue of whether the defendant committed the charged offense, Caldwell, supra, and where the trial court excluded a statement made by *70 the victim shortly before the homicide. Weiland, supra.
The instant case is distinguished from these cases. The defendant admitted shooting John Gates but testified that the weapon fired by accident. Because the defenses of manslaughter and self-defense contemplate an intentional act, the testimony of the defendant regarding the "accidental" nature of the offense was sufficient to rule out self-defense as well as "sudden passion" or "heat of blood". On the evening of the shooting, the defendant drove to Gates' place of employment and watched Gates leave in his truck. The defendant then went to Ms. Bissell's house, observed Gates' truck parked in front and waited outside Ms. Bissell's house, with a shotgun, for approximately two hours. The defendant testified that he and John Gates had a verbal confrontation approximately one week earlier, during which Gates had threatened to blow the defendant's head off. Other evidence indicated that John Gates had a gun in his truck when he was killed. At trial, and in a videotaped statement, the defendant stated he waited outside the Bissell house because he wanted to talk to Gates. According to the defendant, as John Gates approached the truck, the defendant moved toward Gates, but he stepped in a hole causing the shotgun to fire accidentally, striking Gates. The record indicates no provocation by John Gates immediately prior to the shooting. The jury was presented with enough evidence to determine whether the shooting was accidental or intentional and whether it was provoked. The excluded testimony could not have provided a basis for the jury to return the responsive verdict of manslaughter. Under these circumstances, testimony regarding the prior relationship between the defendant and John Gates, or the defendant and Peggy Bissell, was not relevant to the elements of manslaughter or self-defense, or to the defense of accidental shooting.
For this and the foregoing reasons, we find that the exclusion of testimony regarding the defendant's prior relationship with either John Gates or Peggy Bissell did not affect the substantial rights of the accused. Error may not be predicated upon this ruling, LSA-C.E. Art. 103 A, and the conviction may not be reversed on this basis. LSA-C.Cr.P. Art. 921. This testimony was totally extraneous to either of the defenses offered by the defendant and was properly excluded.

Assignment of Error No. 4
The fourth assignment of error alleges that the trial court erred in refusing to allow the defendant to introduce the testimony of defense psychiatrist Dr. Paul Ware. The defendant gave no notice of intent to introduce testimony relating to the mental state of the defendant at the time of the commission of the crime under LSA-C.Cr.P. Art. 726.[1]
The substance of the excluded testimony made known to the court by defense counsel appears to be that Dr. Ware was to testify on the subject of manslaughter and not on the subject of diminished mental capacity. The defendant alleges that Article 726 was therefore not applicable. However, the defendant urges in his motion for new trial that Dr. Ware's testimony would have established the defendant's state of mind. LSA-C.Cr.P. Art. 726 is based upon Fed.R.Crim.P. Rule 12.2. State v. Wade, 375 So.2d 97 (La.1979), cert. denied, 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980). Federal cases reviewing that article provide a helpful source for review of a claim that omission of the evidence results in the denial of the right to present a defense. See State v. Trahan, 543 So.2d 984 (La.App. 3d Cir.1989), overruled on other grounds, 551 So.2d 1303, 1304 (La.1989). Under federal procedural rules, where other testimony of the defendant's mental condition at the time of the incident was introduced at trial, it has been held that the *71 defendant was not deprived of the right to present a defense because those circumstances were presented to the jury. State v. Buchbinder, 796 F.2d 910 (7th Cir.1986); U.S. v. Hillsberg, 812 F.2d 328 (7th Cir. 1987), cert. denied, 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).
Similarly, in the instant case, circumstances indicating the defendant's state of mind were presented to the jury via the defendant's testimony. The defendant specified his reason for looking for and waiting for the victim on September 7 and 8. He stated that the victim threatened him verbally during the week preceding the shooting and that he knew the victim carried a firearm.
The trial court was told by defense counsel that Dr. Ware would testify that statements made by the defendant were true and correct. Expert opinion testimony is inadmissible on the issue of credibility under LSA-C.E. Art. 608. Resolution of factual contradictions and credibility issues are left to the trier of fact in the criminal justice process. State v. Brown, 552 So.2d 612 (La.App. 2d Cir.1989), writ denied, 558 So.2d 581 (La.1990); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988); State v. Zeno, 469 So.2d 337 (La.App. 2d Cir.1985), writ denied, 474 So.2d 1303 (La.1985). The court minutes reflect that the case was continued several times, thus the defendant had ample time to provide notice to the state as required by Article 726. The defendant gave no written notice of intent to use expert testimony regarding his state of mind at the time of the offense. Therefore, the trial court did not err in excluding the testimony of Dr. Ware.

ADMISSIBILITY OF PHYSICAL EVIDENCE

Assignments of Error Nos. 5 and 6
The fifth assignment of error alleges that the trial court erred in refusing to allow the defendant to place in evidence a shotgun shell when there had been no objection by the state. The defendant's sixth assignment of error contends that the trial court erred by excluding a document prepared by defense counsel. Each of these items of physical evidence was offered to extrinsically attack the credibility of a witness.
Extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness. LSA-C.E. Art. 607 D(2). Under these circumstances, extrinsic evidence is admissible after the proponent has directed the witness' attention to the matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so. LSA-C.E. Art. 613. Relevant evidence may be excluded if it would unnecessarily confuse the jury. State v. Caldwell, supra. Irrelevant evidence is inadmissible. LSA-C.E. Art. 402.
The defendant sought to introduce into evidence a federal 12-gauge 2¾ inch magnum .00 buckshot shell containing 12 pellets where the state's firearms expert had testified that .00 buckshot contained 9 pellets. When defense counsel directed the witness' attention to the magnum shell, the witness readily agreed that the federal magnum shell contained 12 pellets. The shell was offered solely to attack the credibility of the witness by showing that .00 buckshot can contain more than 9 pellets, but the witness admitted this fact. There was no evidence that this federal magnum shell was connected in any manner to the charged offense. The trial court reasoned that the shell might unduly confuse the jury since it had no connection to the case. Defense counsel achieved his goal of impeachment by eliciting the witness' admission. At that point, the shell itself had no further probative value regarding any fact of consequence. Therefore the trial judge properly exercised his discretion by excluding its introduction into evidence. The trial court did not abuse its discretion in excluding the evidence absent a contemporaneous objection as no substantial right of the defendant was affected. LSA-C.E. Art. 103 A.
We now turn to the questioned ruling which excluded a document prepared *72 by defense counsel. The record does not indicate what was contained in the document. The attorney's briefs indicate that the document was a writing prepared by defense counsel the morning of the trial. The defendant argues that this evidence was admissible to attack the credibility of the witness, however, without knowing the content of the writing, such a conclusion is pure speculation.
The record indicates neither that the witness was afforded the opportunity to admit the matter(s) alleged by this document, nor that the witness failed to so admit. The trial court has great discretion in rulings on evidence and did not err in excluding the document.

Assignment of Error No. 7
The defendant further alleges that the trial court erred in failing to allow defense counsel to ask leading questions of Dr. Richard Bailey, an expert witness of the state. Leading questions are generally permitted on cross-examination. LSA-C.E. Art. 611 C. The trial court did not prohibit defense counsel from asking leading questions. The court simply required that defense counsel put all questions in interrogatory form. The question objected to was:
That gun would tend to go off about four times faster than the ordinary shotgun, if you are just talking about eight pounds versus two?
The prosecution objected that defense counsel was making statements and not asking questions. Defense counsel was not prevented from rephrasing the question. In fact, the questioning continued and defense counsel was allowed to continue to ask leading questions. The defendant has failed to show any prejudice from the trial court's ruling. For these reasons this assignment of error is without merit.

Assignment of Error No. 8
The defendant alleges that the trial court erred in denying him a new trial based on the errors alleged and discussed above and on ineffective assistance of counsel. Defense counsel's mother was hospitalized for a serious illness during the course of the trial and she died during jury deliberations. The defendant alleges that he did not receive effective assistance of counsel due to the illness of defense counsel's mother. Ordinarily, claims of ineffective assistance of counsel are more properly raised by an application for post-conviction relief upon which an evidentiary hearing may be held. State v. Cupit, 508 So.2d 996 (La.App. 2d Cir.1987), writ denied, 514 So.2d 1174 (La.1987). However, in the interest of judicial economy, such a claim may be considered on direct appeal where the record contains the evidence necessary to evaluate the claim. State v. Bonnett, supra; State v. Cupit, supra. In the present case, the record before this court allows a review of the defendant's allegations.
Our review of the record discloses no failing of defense counsel of constitutional proportions. The performance of the defendant's counsel met the standard as elucidated by the U.S. Supreme Court:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), at 104 S.Ct. 2064. In considering such a claim, a court need not "[A]ddress both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 104 S.Ct. at 2069; See also Smith v. Puckett, 907 F.2d 581 (5th Cir. 1990). There is a strong presumption that the conduct of counsel falls within the wide range of responsible professional assistance. State v. Cupit, supra. As the Fifth Circuit noted in Knighton v. Maggio, 740 F.2d 1344 (5th Cir.1984),
One claiming ineffective assistance of counsel must identify specific acts or *73 omissions; general statements and conclusionary charges will not suffice.
Id. at 1349.
The defendant does not make specific allegations of error. He simply lists statements made by defense counsel during trial. These statements do not show that defense counsel made serious errors and that the errors were so serious as to deprive the defendant of a fair trial. The defendant's conclusory allegation fails to assert anything tending to show potential prejudice in this regard. For this reason, and reasons indicated in our discussion of the other assignments of error, our confidence in the outcome of the defendant's trial is in no way undermined by counsel's performance. This assignment of error is without merit.

CONCLUSION
Finding no reversible error, we affirm.
AFFIRMED.
NOTES
[1] LSA-C.Cr.P. Art. 726 provides:

A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to the trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk....