**J.A. AVERY, Jr., Petitioner-Appellant,**

v.

**Raymond K. PROCUNIER, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 83–1761.

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1985.

Law Offices of Arthur J. Brender, Jr., Arthur J. Brender, Jr. (Court-Appointed), Fort Worth, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before TIMBERS,* POLITZ and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

J.A. Avery, Jr. appeals a denial of habeas corpus relief, 28 U.S.C. § 2254, contending that the district court erred in (1) denying his claim of ineffective assistance of counsel, (2) finding the use of perjured testimony constitutionally permissible, (3) applying *Stone v. Powell* to bar the complaint of illegal arrest and seizure of evidence, (4) denying the claim of self-incrimination, and (5) applying Rule 9(a) of the Rules Governing Section 2254 Cases and dismissing the appeal-related claim. Finding neither error of fact or law, we affirm.

### Facts

Avery was convicted of robbery in state court in Tarrant County, Texas on February 25, 1960 and received an enhanced sentence of life imprisonment. No direct appeal was taken. Three state habeas applications were denied. On February 20, 1979, Avery filed the instant petition for federal habeas complaining of an illegal arrest, an illegal search and seizure, a violation of the self-incrimination provision by a forced reenactment of the crime, a failure to receive effective assistance of counsel and a denial of his right of direct appeal of his conviction.

The bizarre factual background of the present writ application reads like a novel written by an author whose imagination has run wild. Avery, then 29 and labeled a young "hoodlum," "desperado" and "tough guy" by the local press, had a string of criminal offenses, minor to serious, at the time of his trial on the conviction now being challenged. When tried on that rob-

---

* Circuit Judge of the Second Circuit, sitting by designation.

bery charge, according to the newspaper account, Avery was "fresh from a 25-year conviction in Dallas," which had been assessed the day before.

While awaiting trial Avery was confined in the Tarrant County jail under the then-Sheriff Harlon Wright, about whom suggestions of illicit activities swirled. Avery allegedly was knowledgeable about those activities and had been asked by the District Attorney to testify before the grand jury investigating the sheriff. Avery told the sheriff about this request. Shortly thereafter, according to Avery, a chain of events started which culminated in his near-fatal shooting.

Avery had been a "trusty" and, as such, was accorded special privileges by the sheriff and the jail buildings manager, Wayne Whittenberg. Privileges included leaving the jail unescorted, usually to perform some errand for Wright or Whittenberg, often using their cars. Sometime in September 1959 Avery allegedly assisted Whittenberg in the theft of a box of meat from the jail by loading it into Whittenberg's car. In return Avery was allowed to use Whittenberg's auto for a visit to his mother. While driving to his mother's, Avery heard a radio broadcast that he had escaped and was considered armed and dangerous. Avery was not armed. He panicked when he heard the bulletin and felt like he was "riding a shingle in the middle of the ocean." He left the area and traveled to east Texas where he was later arrested in Gregg County. He escaped from that jail motivated, Avery said, by his fear that if he returned to the Tarrant County jail he would be killed.

On November 29, while hiding in Dallas, Avery was chased by Tarrant County deputies. The chase ended with an exchange of shots, the exchange being denied by Avery who said he was not armed, and the riddling of Avery's vehicle with shotgun blasts. The Tarrant County deputies were not accompanied by Dallas police or deputies. One shotgun round struck Avery's arm. Avery testified that the pellets severed the nerves, probably saving his life, because he feigned death when checked by the deputies who allegedly slammed the car door on his hand to see if he would flinch. Also according to Avery, Dallas Police arrived at that time and stopped the shooting by the Tarrant deputies who were in street dress, and, Avery attests, bent on killing him.

Following his release from the hospital, Avery was taken to the Dallas County jail where he remained until his trial and conviction on February 24, 1960 of a robbery charge. He was taken to Tarrant County jail that day. On the following day, February 25, 1960, counsel was appointed, Avery waived the 10-day trial delay provided by Texas law, and the pending robbery charge was tried, ending that evening with a verdict of guilty. Avery waived the delay for filing a motion for new trial and requested immediate sentencing. The court obliged and Avery was sentenced to life. On February 26, 1960, he was delivered over to the custody of the Texas Department of Corrections.

Avery maintains that he waived sentencing delays and did not take an appeal because he feared for his life if he remained in the Tarrant County jail. He understood that if he appealed he would have remained in the local jail for months until the appeal was concluded. Avery states that he chose an immediate transfer into the custody of state prison officials with the intention to take care of his appeal after his safe transfer. No direct appeal was ever taken. No out-of-time appeal was requested.

Avery's testimony regarding his fear of remaining in the custody of the Tarrant County sheriff's office was corroborated by the testimony of the former District Attorney Doug Crouch and that of Avery's court-appointed attorney, Jack Mackin, both of whom testified at the federal habeas hearing. Defense counsel testified that he had concluded that at the time of Avery's arrest the officers had tried to kill him. The District Attorney, after he left office, wrote a letter to the Texas Board of Pardons and Paroles in which he stated:

I was District Attorney when this man was prosecuted, and it was a most unusual case indeed. He requested to be tried and sent to the penitentiary at once so that he would not have to remain in the Tarrant County Jail under the circumstances then existing. By arrangement with certain persons connected with the County and Sheriff's Department, he had been making nocturnal visits to some places outside the confines of the jail. He was shot and seriously wounded in Dallas by Tarrant County Sheriff's deputies under the most questionable circumstances and ones that caused me to fear for his safety if he should be reincarcerated in the jail. So, as I explained before he begged to be sent to the penitentiary. I have always felt that he was not treated right by certain people involved and that he should receive a lesser sentence.

The former District Attorney added a postscript to this letter, recognizing that the events outlined sounded extraordinary, "but that is the way it was, and then some. Incidentally, this matter helped precipitate Tarrant County's electing a new Sheriff."

Avery filed three applications for state collateral relief, on February 14, 1968, September 16, 1968 and April 17, 1978. Relief was denied. As previously noted, the present § 2254 application was filed on February 20, 1979, nineteen years after Avery's conviction.

### Analysis

1. *Ineffective Assistance of Counsel*

■ Avery contends that he did not receive effective assistance of counsel. Defense counsel, an experienced criminal defense lawyer, was appointed the morning of trial. Avery waived the delay to which he was entitled and the attorney ably reacted to the time constraints thus caused by his client. Counsel cross-examined the state's witnesses thoroughly and he made timely objections on key issues which were sustained. A review of the state trial record does not disclose any failing of defense counsel of constitutional proportions. Nor has Avery pointed to any. The per-

formance of counsel met the standard as elucidated in *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Knighton v. Maggio,* 740 F.2d 1344 at 1348–49 (5th Cir.1984), and *Moore v. Maggio,* 740 F.2d 308 (5th Cir. 1984). The Supreme Court held that to justify the reversal of a conviction for ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient … Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

104 S.Ct. at 2064. We find neither deficiency on the part of defense counsel nor any prejudice suffered by Avery as a result of his attorney's performance or lack of performance. We have reviewed the performance of counsel under the standard of *Strickland v. Washington,* without giving any consideration to the fact that Avery's principal complaint is that his attorney did not have sufficient time to prepare after he (Avery) waived the 10-day trial delay. The state's case was straightforward; the evidence that Avery committed the cafeteria robbery was abundant. The cafeteria manager picked Avery out of a fair lineup shortly after the robbery and made an unqualified identification of him in court, referring to description, voice and mannerisms in doing so. When arrested, Avery was in possession of a "marked" bill which was taken during the robbery. Our confidence in the outcome of Avery's trial is in no way undermined by the record's reflection of counsel's performance.

2. *Use of Perjured Testimony*

■ Avery maintains that the state used the perjured testimony of the jail building manager, Wayne Whittenberg, who testified that Avery held a knife on him, forced him into the jail's boiler room, tied him up, took his car keys, watch and money, and escaped. Avery insists that he had the run of the jail as a trusty and that Whittenberg had allowed him to leave the jail to visit his

mother, granting use of the car for that purpose.

To justify habeas corpus relief on this ground Avery must show that the state knowingly used perjured testimony. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Shaw v. Estelle*, 686 F.2d 273 (5th Cir.1982), *citing Griffith v. United States*, 535 F.2d 320 (5th Cir.1976). Avery has made no such showing. To the contrary, the record indicates that the integrity and professionalism of the district attorney and his assistants assigned to the Avery prosecution were above reproach. Avery did not establish that the prosecutor knew that Whittenberg was lying and, in spite of that knowledge, offered his testimony. Avery has thus not met the triad test we set out in *Griffith*. This complaint is without merit.

### 3. *Illegal Arrest and Search*

■ Avery contends that he was illegally arrested on June 2, 1959 and that the "marked" $10 bill found on his person was "poisoned" fruit. This issue was raised at trial; Avery's counsel objected to the introduction of the money as fruit of a search incident to an unlawful arrest. The court overruled the objection. Trial testimony reflects that Avery was arrested as a suspect in a bowling alley robbery, based on a photographic identification by the manager of that facility. The district court found that the teachings of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precluded federal habeas review of fourth amendment complaints when the state provided an opportunity for full and fair examination of the claim. Avery contends that in 1960 the prevailing practice in Texas courts did not afford a full and fair examination of fourth amendment challenges to arrests and seizures. The present record does not bear out that complaint. We agree with the district court that the *Stone v. Powell* bar does not permit our review of this state court action.

### 4. *Self Incrimination*

■ After he was picked out of a lineup by the cafeteria manager, Avery was taken to the cafeteria and forced to reenact the crime for the benefit of the victim. He now contends that this constitutes a violation of the fifth amendment's proscription against self-incrimination. Although this is far from a commendable procedure, indeed it is to be pointedly discouraged, in the present setting the misstep does not reach constitutional proportions. A few hours before the reenactment the cafeteria manager had identified Avery in a lineup, the fairness of which has not been challenged. No evidence was offered of any statement Avery may have made during the reenactment and the manager showed no equivocation or hesitation in identifying Avery as the perpetrator. In addition, upon request of Avery's counsel, the jury was instructed not to consider the testimony relative to the reenactment for any purpose. Under these circumstances, we find no merit in this contention.

### 5. *Failure to Appeal. Rule 9(a)*

■ The district court concluded that Avery's complaint that he never had a direct appeal was subject to dismissal under Rule 9(a) of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254. We agree. In a decision rendered this date, *Strahan v. Blackburn*, 750 F.2d 438 (5th Cir.1984), we analyzed the applicability of Rule 9(a) and sought the thread woven through those cases in which habeas petitions were dismissed because of prejudicial delay. We merely repeat the essence of the prescript. When a delay between the time of the trial and the filing of the § 2254 petition is found to be unreasonable, upon a particularized showing of delay-occasioned prejudice to the state's ability to respond to the habeas petition, the state may be granted a dismissal unless the habeas petitioner satisfactorily shows that, despite the exercise of reasonable diligence, the grounds alleged could not have been urged before the accrual of the state's prejudice. By pleading filed February 20, 1979, Avery contends that he was denied a direct appeal of his February 25, 1960 conviction. Prior

to the instant conviction Avery, albeit a relatively young man, had at least thrice been convicted of felony charges. There is no suggestion that he did not understand the significance of a timely appeal. He wanted to leave the reach of the Tarrant County sheriff posthaste and he did so on February 26, 1960, the day following his conviction and sentence. He said he intended to see to an appeal after delivery into custody of the state prison authorities. He did not do so. He contends that his failure to timely appeal was the result of a constitutional deprivation which warrants federal habeas relief.

The state insists that it is materially prejudiced in preparing an appropriate response to this charge, citing the deaths of the trial judge, sheriff, and prosecutor. In addition, Wayne Whittenberg, the jail building manager, could not be found and the court-appointed trial counsel had no independent recollection of the trial. As reflected by the cases collected in *Strahan v. Blackburn*, 750 F.2d at 441, n. 4, these instances of prejudice suffice to warrant dismissal of this claim under Rule 9(a). The 19-year delay is unreasonable. The delay materially prejudiced the state's ability to respond to Avery's petition. Avery has not carried his burden of showing that he could not have urged these grounds before the state experienced prejudice as a consequence of the deaths of potential witnesses and the real or effective unavailability of others. The district court correctly dismissed this claim.

The judgment of the district court is AFFIRMED.