535 So.2d 885 (1988)
STATE of Louisiana, Appellee,
v.
Michael LLOYD and Charisse Lavette Embry Lloyd, Appellants.
No. 19784-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Writ Granted in Part with Order; Otherwise Denied February 24, 1989.
*886 E. Orum Young, D.C. Bernhardt, Monroe, for appellants.
James A. Norris, Jr., Robert S. Noel, II, Monroe, for appellee.
Before HALL, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
The defendants, Michael and Charisse Lloyd, appeal their convictions and sentences for manslaughter, a violation of LSA-R.S. 14:31. We affirm.

FACTS
The co-defendants, Michael and Charisse Lloyd, are husband and wife. On October 13, 1986, Charisse Lloyd gave birth to the couple's second child, Michael Lloyd, Jr., the victim of the present offense.
On December 22, 1986, Michael Lloyd returned home around noon after going to the unemployment office in Monroe, Louisiana. He began preparing to take two-month old Michael, Jr. to the local health unit for shots and to obtain baby formula. Since the Lloyds had no car, Michael Lloyd had arranged for a ride with a neighbor. Charisse Lloyd went into the couple's bedroom and retrieved the infant. At that time, she noticed the baby was not breathing. When she informed her husband of this emergency, he immediately took the infant from her, went to the neighbor's home and he and the child were given a ride to the North Monroe Community Hospital by the neighbor.
On the way to the hospital, the neighbor flagged down Deputy Danny Bridges of *887 the Ouachita Parish Sheriff's office to ask directions to the hospital. Bridges was informed that the Lloyd baby did not appear to be breathing.
Deputy Bridges, trained in first aid, took the child from Michael Lloyd and found that the child was obviously dead. He also noted that the infant was wearing an extremely dirty diaper with feces leaking from it onto the child's leg.
The child was taken to the emergency room of North Monroe Community Hospital and was pronounced dead. An examination of the body revealed that the child was extremely filthy, had a dirty diaper and was suffering from an obviously infected diaper rash.
The child's body was transported to Bossier City, Louisiana for an autopsy conducted by Dr. George McCormick and his assistant, Mrs. Dawn Fain. Dr. McCormick noted the two-month old child was extremely filthy and appeared never to have been bathed. He noted the child's diaper contained a large amount of both old and fresh feces, as well as blood and skin that peeled off when the diaper was removed. According to the autopsy report, the infant was suffering from severe parental neglect. The infant had marked filth in most of the body creases. Diaper burns were present over the external genitalia, in the inguinal folds, and around the anus. These burns were so severe that the skin sloughing in those areas was comparable to third degree burns. The continued exposure of these open wounds to fecal matter led to sepsis, a blood stream infection, which eventually caused a respiratory infection, respiratory failure, congestive cardiac failure and ultimately, death.
Shortly after the child was pronounced dead, law enforcement officials questioned Michael Lloyd and went to the defendant's residence to question Charisse Lloyd.
The officers found the residence to be utterly filthy with piles of garbage located in various areas of the house. In one garbage pile was found a package labeled "Educational Materials for New Mothers." The only clean area was the master bedroom in which the defendants and the victim had slept. This area appeared to have been freshly cleaned. The bedding was wet. Freshly washed, and still wet, infant clothing was found in a chest of drawers and hanging about the room. The defendants appeared to be using charcoal grills inside the residence for cooking and heating. The smoke alarm in the house was sounding and the charcoal fumes and foul odors were so prevalent that the officers conducting the investigation developed headaches and frequently had to go outside for fresh air.
The defendants were advised of their rights and agreed to questioning regarding the infant. According to Michael Lloyd, he never bathed the child and had never seen his wife bathe the child. He also stated that Charisse simply wiped the baby off with a rag when she changed his diapers. Michael Lloyd said he last saw the child alive at around midnight the previous night.
According to Charisse Lloyd, the child had some diarrhea and chest congestion but otherwise appeared healthy. She had noted a small amount of diaper rash but thought the rash was clearing up. She reported that she only changed the baby when he cried. She claimed to have changed the baby's diaper at approximately 1 a.m. on December 22, 1986. When the baby did not awaken later that morning, she assumed that he was sleeping and she resolved not to disturb him. She attributed any peeling of the child's skin to the use of a harsh soap she claimed to have used in bathing him the day before. No such soap was found at the residence.
The defendants were arrested on December 29, 1986 and on January 14, 1987 were charged by bill of information with manslaughter in the death of their infant son. Both defendants, represented by separate counsel, waived trial by jury. A bench trial was held on April 1April 3, 1987. Both defendants were found guilty as charged.
Charisse Lloyd filed a motion for a pre-sentence mental examination which was denied by the trial court. Both defendants filed motions for new trial and for post *888 verdict judgment of acquittal. These motions were also denied by the trial court.
On June 25, 1987, both defendants were sentenced to serve sixteen years at hard labor. Both defendants have appealed their convictions and sentences based upon numerous assignments of error.

MOTION FOR CONTINUANCE
The defendant, Charisse Lloyd, contends that the trial court erred in failing to grant a motion for continuance of the trial of this case because her counsel was engaged in the trial of another unrelated case at the same time. She also argues that because the trial court required her counsel to try two cases simultaneously, she was denied effective assistance of counsel. She further argues that the trial court engaged in unauthorized communications with the prosecution. These arguments are meritless.
The trial of this case was originally set for March 9, 1987, but on that date the case was continued until March 30, 1987. On March 30, 1987, the case was again continued until the morning until April 1, 1987 and Mrs. Lloyd's counsel understood that the present case had priority over other criminal cases set for that section of court.
On March 30, 1987, her counsel began a hearing in an unrelated case before another judge in the Fourth Judicial District. That case was not concluded on March 30, 1987, and was continued until the afternoon of April 1, 1987.
On the morning of April 1, 1987, Mrs. Lloyd's counsel requested a continuance, arguing he could not conduct two trials simultaneously. At that time, the trial court stated that the judge sitting in the unrelated case had been contacted and it was agreed that the present case would be recessed in order to allow counsel to complete the trial of his other case that afternoon as scheduled. Therefore, defense counsel's motion for continuance was denied. The hearing on the unrelated case was concluded on the afternoon of April 1, 1987 and trial resumed in the present case on the morning of April 2, 1987.
Motions for continuance are governed by LSA-C.Cr.P. Art. 707 which provides that, when such motions are filed less than seven days prior to commencement of the trial, the trial court may grant the motion upon a showing that the motion is in the interest of justice. The grant or a refusal of a motion for a continuance rests within the sound discretion of the trial judge and the ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion and a showing of specific prejudice caused by the denial. State v. Jordan, 420 So.2d 420 (La.1982).
In the present case, as demonstrated by the facts stated above, defense counsel was not required to try two cases simultaneously. Actually, the trial court made every effort to accommodate defense counsel in this case. In addition, the defendant has made no showing that the court's ruling prejudiced her in any way.
The defendant, Mrs. Lloyd, argues that requiring counsel to try two cases at once denied her the right to effective assistance of counsel. As stated above, the allegation regarding simultaneous trials is not supported by the record. Further, Mrs. Lloyd has failed to demonstrate that she was denied effective assistance of counsel. In order to show that the defendant's right to effective assistance of counsel has been violated, counsel's conduct must have so undermined the adversarial process that the trial cannot be relied upon to have produced a just result. The defendant must show that counsel's conduct was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Cupit, 508 So.2d 996 (La.App.2d Cir.1987) writ denied 514 So.2d 1174 (La. 1987).
Defense counsel was not required to try two cases simultaneously. The record supports the trial court finding that the defendant failed to show that counsel's performance was deficient or that she was prejudiced in any way.
*889 Mrs. Lloyd further argues the trial court's actions were improper in that the trial judge engaged in conversations with the prosecutor and with the judge hearing the unrelated matter in which counsel was involved and that as a result, the court made the decision to deny the motion to continue without consulting with defense counsel or allowing the defense an opportunity to present argument on the motion. It is argued, in effect, that the trial court's conduct was contrary to the code of judicial conduct. The record shows that the trial judge consulted with the prosecutors pursuant to local court rules concerning docketing of criminal matters set for jury trials in a particular week. The trial court's discussion with his fellow judge was also directed toward this end. The merits of the cases were not discussed. Defense counsel was granted a hearing on the motion to continue and was afforded ample opportunity to make arguments supporting his position.
From the record before this court, it does not appear that the trial court action was improper in any manner nor has Mrs. Lloyd demonstrated any prejudice attributable to the court's action.

JURY INSTRUCTIONS
Both defendants, charged with manslaughter, argue the trial court erred in failing to instruct itself as to the elements of negligent homicide and that, if the evidence showed the defendants to be guilty only of negligent homicide, then the court must enter a finding of not guilty of the charge of manslaughter.
The defendants submitted requested charges to the trial court under the authority of LSA-C.Cr.P. Art. 781 which provides that, when a case is tried without a jury, the state or the defendant may request the court to charge itself in accordance with written charges presented to the court. The requested charges are governed by the rules of procedure relative to requested charges in jury cases.
The instructions requested by the defendants were applicable to the case, although not related to a statutorily responsive verdict. LSA-C.Cr.P. Art. 814 provides an exclusive list of responsive verdicts for certain crimes, including manslaughter. Those verdicts are guilty and not guilty. Although it is recognized that negligent homicide is a lesser included offense of manslaughter involving negligence, it is not a legislatively created responsive verdict. State v. Tompkins, 403 So.2d 644 (La.1981). Therefore, the defendants are correct in arguing that, if the facts showed them to be guilty only of negligent homicide, then the court's only option was to find them not guilty of manslaughter.
The defendants were also correct in requesting instructions as to the definition of negligent homicide. Even though this offense is not a responsive verdict to a charge of manslaughter, it has been held that when the defendant is charged with manslaughter, an instruction on negligent homicide is correct, pertinent and should be given. State v. Marse, 365 So.2d 1319 (La. 1978).[1] Therefore, the trial court committed error in failing to instruct itself regarding negligent homicide.
However, failure to give such an instruction is not prejudicial and does not constitute reversible error when the trier of fact has sufficient information to understand that if the defendant was guilty only of negligent homicide he should be found not guilty of manslaughter. State v. Marse, supra.
In the present case, the trier of fact was a judge, rather than a jury. The trial judge's knowledge of criminal law would certainly include a consideration of responsive verdicts to the charged offense, as well as the effect of a finding on the question of negligent homicide. Also, the court had the benefit of counsel's argument on these points in its consideration of the evidence *890 presented at trial. Therefore, the court's failure to instruct itself as requested by the defendants, although error, did not constitute reversible error. LSA-C.Cr. P. Art. 921. No prejudice has been shown.
Also related to this argument, the defendants contend that the evidence presented was insufficient to support a conviction of manslaughter because there was no showing of any intentional conduct on their part which resulted in the death of the child. These arguments are meritless.
The defendants were charged with felony manslaughter under LSA-R.S. 14:31(2)(a) which includes homicides committed without intent to cause death or great bodily harm when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person. The state contends the death of the child was caused by unintentional conduct of the defendants and the predicate offense constituting an unenumerated felony was cruelty to juveniles defined by LSA-R.S. 14:93. That statute defines cruelty to juveniles as the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child.
The state contends that the defendants committed the crime of cruelty to juveniles through their criminal negligence toward their son, and that the defendants' criminal negligence in failing to care for the infant caused his death. Criminal negligence exists when, although neither specific nor criminal intent is present, there is such disregard for the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. LSA-R.S. 14:12.
Under the provisions of LSA-R.S. 14:31(2)(a), the charge of manslaughter is supported by showing the death of the victim resulted from the commission by the defendants of the unenumerated felony of cruelty to juveniles. In the instant case, the record amply supports the trial court's conclusion that the defendants were guilty of gross and prolonged criminal negligence toward their son that rose to the level of cruelty to a juvenile and that, as a result of the commission of that offense, the child died. A showing of intentional conduct by the defendants was not required by the statute. Therefore, the record supports the trial court's finding that both defendants were guilty of manslaughter.[2]

MOTIONS FOR NEW TRIAL AND POST JUDGMENT VERDICT OF ACQUITTAL
In the trial court, both defendants filed motions for new trial and for post judgment verdicts of acquittal. These motions were denied by the trial court. Both defendants assigned as error the trial court's denial of the motions. However, on appeal, both defendants have failed to brief these assignments of error. Assignments of error which are not briefed are considered abandoned. URCA Rule 2-12.4. Therefore, because these assignments of error are deemed abandoned by the defendants, they will not be addressed.

MOTION FOR PRE-SENTENCE MENTAL EXAMINATION
The defendant, Charisse Lloyd, argues the trial court erred in denying her motion for a pre-sentence mental examination. This argument is meritless.
Prior to sentencing, defense counsel for Charisse Lloyd filed a motion with the trial court for a pre-sentence mental examination under LSA-C.Cr.P. Art. 875(A)(3) which grants the court the discretion to order such an examination as part of the court ordered pre-sentence investigation. Counsel stated that Charisse Lloyd exhibited *891 severe emotional depression and had told him "God turned on" the electricity to the Lloyd residence in November, 1986. The examination was requested in order to show mitigating factors to be considered in imposing sentence on Mrs. Lloyd.
On June 24, 1987, a hearing was held on the motion. At that time, defense counsel filed into the record a letter written to counsel by a local psychiatrist which indicated that he had read newspaper accounts of the trial and suggested that Charisse Lloyd might be suffering from some unspecified form of mental illness. Defense counsel offered no other evidence in support of the motion.
LSA-C.Cr.P. Art. 875 grants discretion to the trial court to order a mental or physical examination prior to sentencing as a part of the pre-sentence investigation. Such an examination is not made mandatory upon a request by the defendant. In fact, ordering any form of a pre-sentence investigation lies within the discretion of the trial court. State v. Carter, 463 So.2d 785 (La.App.2d Cir.1985).
In denying the motion, the trial court stated that during and after the trial Mrs. Lloyd appeared to be lucid and exhibited no signs of mental illness. The court noted that ample opportunity existed to observe Mrs. Lloyd's mental condition not only during this criminal proceeding but also in a separate juvenile proceeding concerning the custody of the defendant's other child, a two year-old daughter. In addition, the court noted that in the pre-sentence investigation report, Mrs. Lloyd and members of her family denied that she suffered from any type of mental dysfunction.
Considering all the circumstances of this case, it does not appear that the trial court abused its discretion in declining to order the requested examination.
It is important to note that defense counsel did not argue that Mrs. Lloyd was insane or mentally incompetent to proceed with the sentencing under LSA-C.Cr.P. Art. 641 et seq. In fact, counsel specifically admitted that Mrs. Lloyd did not lack capacity to proceed. Rather, he argued only that the possibility of some unspecified mental dysfunction existed which, if shown, should be considered as a mitigating factor in sentencing.
In the present case, Mrs. Lloyd provided only bare allegations of mental illness as a mitigating factor in the commission of this crime. Therefore, the trial court was well within its discretion in declining to order that a mental examination form a part of the pre-sentence investigation.

EXCESSIVE SENTENCES
Both defendants have appealed their sentences to sixteen years at hard labor as excessive. These arguments are meritless.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C. Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983); State v. Tully, 430 So.2d 124 (La.App.2d Cir. 1983), writ denied 435 So.2d 438 (La.1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in LSA-C.Cr.P. Art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App.2d Cir. 1983), writ denied 438 So.2d 1112 (La.1983).
After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence *892 of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La. App.2d Cir.1983).
A sentence is unconstitutionally excessive in violation of La. Const. 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La.1983).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions, but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App.2d Cir.1984), writ denied 452 So.2d 695 (La. 1984). As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Lathers, 444 So. 2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Williams, 454 So. 2d 1287 (La.App.2d Cir.1984). State v. Griffin, 455 So.2d 681 (La.App.2d Cir. 1984), writ denied 458 So.2d 128 (La.1984); State v. Richardson, 446 So.2d 820 (La. App.2d Cir.1984).
A trial court is not required to render a suspended sentence or probation on a first felony offense, but may consider whatever factors and evidence are deemed important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La. App.2d Cir.1984); State v. Tully, supra.
A review of the record reveals that as to each defendant, the sentencing court adequately complied with the provisions of LSA-C.Cr.P. Art. 894.1. As to Mr. Lloyd, the court noted that he had a high school education having received a general equivalency diploma (GED). Mr. Lloyd's pre-sentence investigation indicated that he had been unemployed since June, 1986. Mr. Lloyd had no prior felony record but had been charged with possession of marijuana in Chicago, Illinois in 1981 and had been arrested by the Monroe, Louisiana police department for aggravated assault and being drunk and disorderly on November 28, 1986. The pre-sentence investigation indicated that Mr. Lloyd admitted regular use of marijuana and frequent consumption of alcohol.
As to Mrs. Lloyd, the court noted that she had a high school degree and had completed a number of hours toward earning a college degree. The pre-sentence investigation reflected that Mrs. Lloyd was a promising student in high school, and graduated in the top twenty-five percent of her class. She also participated in sports and served as a counselor at a multiple sclerosis camp during the summer months.
The court noted that the defendants' living conditions were deplorable with the presence of garbage and decaying food strewn throughout the house. The court stated that the defendants' crime was "almost heinous in many aspects and it is by people who have basic intelligence enough to know better and who have apparently deliberately chosen to live like that". The court found that the defendants were equally culpable in their neglect of the infant.
Based upon these factors, the court found the defendants would not respond to probationary treatment and, most importantly, that a sentence less than sixteen years at hard labor would deprecate the seriousness of the offense.
The sentence imposed by the trial court is not unconstitutionally excessive. The maximum sentence for manslaughter under LSA-R.S. 14:31 is twenty-one years at hard labor. The trial court imposed upon the defendants little more than two-thirds the maximum possible sentence for the offense charged. This sentence is supported by the record and is not a needless and purposeless imposition of pain and suffering upon the defendants.
*893 The record before this court shows that these defendants totally neglected to care for the needs of their infant child. As a result of the defendants' total neglect, the infant was subjected to intense suffering and pain during the weeks of his life. The child's life terminated in a painful and slow death which could have been prevented simply by using soap and water to regularly bathe the child. The defendants' failure to care for the child when they were capable of doing so, and the dire and dreadful consequences which resulted from their criminal negligence and failure to act, makes them serious offenders and makes this a serious offense warranting the sentencing of these defendants to significant periods of incarceration.

CONCLUSION
For the above stated reasons, the convictions and sentences of the defendants, Michael and Charisse Lavette Embry Lloyd are affirmed.
AFFIRMED.
NOTES
[1] Cf. State v. Tompkins, supra, in which the defendant was charged with an intentional form of manslaughter. See also State v. Adams, 446 So.2d 355 (La.App.3d Cir.1984), writ denied, 449 So.2d 1355 (La.1984) in which an instruction on negligent homicide was correctly denied where there was no evidence that the killing was the result of negligence or an accident.
[2] Cf. State v. Bolden, 501 So.2d 942 (La.App.2d Cir.1987), in which the defendant was found guilty of manslaughter in the death of a child where the predicate offenses were intentional cruelty to a juvenile and simple battery.