670 So.2d 794 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Johnathan CARRIER, Defendant-Appellant.
No. CR95-1003.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*796 Robert Richard Bryant Jr., V. Ed McGuire, III, Lake Charles, for State of Louisiana.
Ronald F. Ware, Lake Charles, for Johnathan Carrier.
Before COOKS, DECUIR and GREMILLION, JJ.
COOKS, Judge.
The defendant, Johnathan Carrier, appeals his conviction for manslaughter and sentence of forty (40) years at hard labor.

FACTS
At approximately 3:00 a.m. on April 20, 1994, The Calcasieu Parish Sheriff's Office was notified that gun shots were being fired behind a 24-hour convenience store near McDonald Street and Louisiana Avenue in Lake Charles. The first officer at the scene drove down McDonald Street and saw Myrnell Weatherall Wilson, clad only in a bath towel, running down the street and screaming her boyfriend entered her apartment, shot her friend, and left. On arrival at Ms. Wilson's apartment, Deputy Luke Pierrotti noticed the front door frame was damaged and jewelry was strewn by the entrance. Inside, he found the nude body of a young man holding a Lorcin L380 semi-automatic pistol, lying face down next to the bed. The young man, presumed dead, was Videl "Shabazz" Mealy. The deputy sealed the area and tried to question Ms. Wilson further, but she was hysterical.
Deputy Thomas Mefford, parked at a nearby convenience store, was informed by Donna Boyd that her boyfriend had been shot. At first the deputy thought she was referring to the shooting at the apartment, but Ms. Boyd informed him otherwise. She took him to the location where her boyfriend was lying in the street. Ms. Boyd's boyfriend, the defendant, suffered two gunshot wounds in the upper right thigh and the right side of his abdomen. When found he was lying south of the apartment complex where the shooting took place. The defendant told Deputy Mefford that he and a friend broke into Wilson's apartment. He insisted his friend shot the victim; and the victim fired in response, striking him. Defendant also stated he and his friend were running from the scene until he fell.
Fifteen feet from where the defendant fell, the police found a Davis Arms .32 caliber semi-automatic pistol hidden beneath a telephone conduit box. The weapon was in the fire position with the safety off, and the clip or magazine was empty. Five .32 caliber casings were found inside the apartment. Three .32 caliber projectiles or bullets were recovered, one from the apartment and two from the body of the victim. Also found near the area was a magazine or clip for a .380 semi-automatic pistol. The .380 clip fit the Lorcin .380 caliber semi-automatic pistol the victim used. Seven .380 caliber casings were recovered from the apartment.
Defendant was transported to Lake Charles Memorial Hospital where he told the police he did not shoot anyone and he did not know who shot him. Later defendant gave a video taped statement to the police.
The record reveals the following events occurred. On April 19, 1994, after leaving work Myrnell Wilson traveled to a local mechanic shop to replace her vehicle's muffler. Realizing she did not have enough money to pay for the repair, she called the defendant to come and lend her the money. Once the repair job was completed defendant told Ms. Wilson he was tired. He accompanied Wilson to her apartment. Defendant took a nap in her bedroom while she watched television, ate lunch, and later joined him in bed. Ms. Wilson denied she and defendant engaged in sexual relations that day. When defendant awoke, Ms. Wilson told him she had a date *797 that evening and he had to leave before 8:00. According to her, defendant said, "Okay, I'll leave."
Ms. Wilson's date did not arrive, but another ex-boyfriend (Shannon Lewis) visited her. After Mr. Lewis arrived, the victim (Videl "Shabazz" Mealy) arrived around midnight. The three talked and watched movies until Ms. Wilson heard sounds outside her windows. She looked outside and saw defendant passing by her apartment on a bicycle. Ms. Wilson informed her friends and they went outside to check on their cars. All three remained outside talking when a young boy approached them and gave Ms. Wilson a box of condoms, saying they were from Johnathan.
Shannon Lewis walked to the front of a nearby convenience store to see who Johnathan was. He saw defendant talking on the phone. They exchanged words; and, defendant pulled a gun and pointed it at Mr. Lewis. According to Mr. Lewis, defendant cocked the gun at which point he ran. He returned near the area where Ms. Wilson and Mr. Mealy were talking, hollered at them that defendant pulled a gun out, and left.
Ms. Wilson and Mr. Mealy went inside her apartment and watched movies and talked. Ms. Wilson remembered Mr. Mealy had a gun with him. Eventually, they went to the bedroom and began to engage in sexual intercourse. Suddenly, defendant kicked the door in, breaking the frame and damaging some furniture. Ms. Wilson testified she looked up and saw defendant pointing a gun at them in bed. She did not recall defendant saying anything, but remembered defendant began firing first. She and Mr. Mealy rolled over to one side of the bed and then Mealy began to fire shots from his pistol. Ms. Wilson ran to the bathroom, locked the door and wrapped herself in a towel. She then jumped out the bathroom window and tried to summon help from her neighbors, who all refused to open their doors. She ultimately jumped a fence topped with barbed wire and ran down the street where Deputy Pierrotti found her.
On cross-examination, Ms. Wilson was evasive, claiming she did not recall much from the night of the shooting, but adding information that the victim was begging for his life while the defendant was shooting. Although she was able to answer most of the questions posed by the prosecution, she was unable to answer the same questions when asked by the defense.
The coroner testified the victim was shot twice. One bullet entered the victim's back and went through his left lung and heart. The other bullet entered the back of the victim's left arm and passed through both lungs, severing the vena cava, the major blood vessel that returns blood from the body to the heart. Both wounds were capable of causing death, but not necessarily instantaneous death.
Defendant was originally charged with second degree murder, but the jury convicted him of the lesser responsive charge of manslaughter. At sentencing, the trial judge imposed the statutory maximum sentence of forty (40) years at hard labor. Defendant asserts three assignments of error on appeal: 1) the evidence was insufficient to support the instant conviction; 2) defendant acted in self-defense; and 3) the sentence imposed is excessive.

ANALYSIS
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982). It is the role of the fact finder to weigh the respective credibility of the witnesses. An appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La. 1983).
*798 To obtain a conviction, the State must prove the elements of the crime beyond a reasonable doubt. The defendant was charged with second degree murder, a violation of La.R.S. 14:30.1. However, the jury returned a conviction of manslaughter, a violation of La.R.S. 14:31 which provides in pertinent part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.
In State v. Prince, 520 So.2d 778 (La.App. 3 Cir.1987), writ denied, 522 So.2d 567 (La. 1988), the defendant was charged with second degree murder and convicted of manslaughter although the evidence that he shot the inebriated victim in the back of the head was not sufficient evidence of any sudden passion, provocation or heat of blood. Upholding the conviction for manslaughter, this court stated:
The responsive verdict of manslaughter in this case operated as a compromise between guilty of second degree murder and not guilty. It was unanimously given. The jury may return any legislatively provided responsive verdict, as long as the evidence was sufficient to support a conviction of the charged offense. State ex rel., Elaire v. Blackburn, 424 So.2d 246, 249 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). The evidence produced in this caseone shotgun blast at close range to the back of the victim's headwas sufficient to support a conviction of second degree murder. The verdict of manslaughter simply reflected the jury's right to compromise between the verdicts of guilty of second degree murder and not guilty. The responsive verdict statute was designed to afford jurors this choice....
Defendant forcibly entered the apartment of Ms. Wilson and shot the victim after finding him in bed with her. We find the evidence was sufficient to support a second degree murder conviction. His conviction of the lesser responsive verdict is supportable even if there was insufficient evidence of provocation, heat of blood or sudden passion.
Defendant argues his actions were in self-defense. When a defendant claims the justification of self-defense, the state has the burden of proving (beyond a reasonable doubt) that the homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982). La.R.S. 14:20 provides a homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger.
The determination of guilt, in such instances, turns on a two-fold inquiry: (1) from the facts presented, could the defendant reasonably have believed his life to be in imminent danger; and (2) was deadly force necessary to prevent the danger? There is no unqualified duty to retreat in an altercation. However, the possibility of escape is a recognized factor in determining whether or not a defendant reasonably believed deadly force was necessary to avoid the danger. State v. Rader, 609 So.2d 857 (La.App. 5 Cir.1992). La.R.S. 14:21 provides a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he *799 desires to withdraw and discontinue the conflict.
The defendant in this case was the aggressor who brought about the difficulty by forcibly entering Ms. Wilson's apartment. In fact, the defendant was the aggressor throughout the evening. The defendant pulled a gun on Shannon Lewis earlier that evening, sent a box of condoms to Ms. Wilson, and stalked her apartment while her friends were visiting. His self-defense argument is without merit.
By his final assignment of error, defendant contends his sentence was excessive. He was convicted of manslaughter and not the more serious offense of second degree murder. The trial judge sentenced defendant to serve forty (40) years at hard labor. Forty (40) years is the maximum sentence allowed by La.R.S. 14:31(B). The sentencing guidelines recommended a sentence between six and eight and one-half years.
The Louisiana Supreme Court in State v. Smith, 94-402 (La. 7/5/94), 639 So.2d 237, discussed the process of appellate review of a trial court's sentencing process and held that:
(1) [W]hile a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Crim.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines. (Footnote omitted).
At sentencing, the trial judge stated defendant was the aggressor who forcibly entered his girlfriend's apartment with the intent to harm the victim. The trial judge also noted defendant also could have been charged with committing aggravated assault and aggravated burglary,[1] and defendant received a benefit when the jury chose to convict him of the lesser crime of manslaughter.
The trial judge also reviewed the presentence investigation report, letters sent on behalf of the defendant, and letters from the family, friends and Army co-workers of the victim. The presentence investigation report established defendant graduated from high school and worked prior to the shooting for local supermarkets, Manpower, and a local truck and equipment dealership. Defendant has a five year old daughter by a woman with whom he is not married. When his relationship with the child's mother ended, he "lived with" Myrnell Wilson for a period. The defendant' spolice record shows only two prior convictions for misdemeanor theft and possession of marijuana; but he has been arrested on other charges including a concealed weapons charge in Texas. While the trial Judge failed to specifically state which aggravating circumstances he relied upon to arrive at defendant's sentence, the Judge stated he considered the guidelines, but felt compelled to impose a harsher sentence.
This court has upheld lengthy sentences for manslaughter. In State v. Ford, 94-1440 (La.App. 3 Cir. 4/5/95), 653 So.2d 107, we affirmed a twenty-five year sentence where the defendant killed a person while engaged in the purchase of cocaine. In State v. Cushman, 94-336 (La.App. 3 Cir. 11/2/94), 649 So.2d 639, we upheld a thirty year sentence for a manslaughter conviction. In State v. Darby, 502 So.2d 274 (La.App. 3 Cir.1987), the defendant was initially charged with second degree murder, but convicted by a jury of manslaughter and given the maximum sentence. This court upheld the sentence noting it was clear the trial court felt the evidence supported a second degree murder *800 verdict which he considered when pronouncing sentence. Such consideration is proper. State v. Roussel, 424 So.2d 226 (La. 1982); State v. Heath, 447 So.2d 570 (La.App. 1 Cir.1984), writ denied, 448 So.2d 1302 (La. 1984). Defendant forcibly entered Ms. Wilson's apartment and shot the victim as he lay in bed. Shortly before the fatal shooting, defendant pulled a gun on Shannon Lewis, sent a box of condoms to Ms. Wilson, and stalked her apartment while her friends were visiting. The trial judge did not abuse his discretion in deviating from the recommended sentence suggested by the guidelines.
To constitute an excessive sentence this court must find the penalty imposed is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals; and, therefore, it is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La. 1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
We recognize that maximum sentences must be reserved for the most egregious and blameworthy of offenders. State v. Lathers, 444 So.2d 96 (La.1983); State v. Darby, supra. Considering the nature and gravity of defendant's crime in the present case, we do not find the penalty imposed is so disproportionate to the crime as to shock our sense of justice.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant could have been charged with aggravated assault for pointing and cocking a gun at Shannon Lewis. He also potentially could have been charged with aggravated burglary after breaking into Myrnell Wilson's apartment while possessing a gun and removing jewelry from the victim.