711 So.2d 715 (1998)
STATE of Louisiana, Appellee,
v.
Jerail Carron HARDY, Defendant Appellant.
No. 97-1248.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
*716 Charles F. Wagner, District Atty., Alexandria, for State.
John Michael Lawrence, Shreveport, for Jerail Carron Hardy.
Before DECUIR, AMY and PICKETT, JJ.
AMY, Judge.
The defendant, Jerail Carron Hardy, was convicted of manslaughter, a violation of La. R.S. 14:31 and was subsequently sentenced to thirty-five years at hard labor without diminution of sentence for good behavior. The defendant now appeals both his conviction and sentence. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL HISTORY
The record indicates that Robert Deville sustained a gunshot wound on the evening of September 19, 1996, in Alexandria, Louisiana. Witnesses to the incident allege that Deville was shot inside of his vehicle while in the vicinity of Turner and Wise Streets. The witnesses maintain that, after the shooting, Deville was able to drive from the scene. The record reveals that he was found soon thereafter inside his vehicle after apparently crashing into an area home. Although taken from the scene to a local hospital, Deville was later pronounced dead. The coroner performing the autopsy reported that Deville's death resulted from a single gunshot wound to the chest.
On November 21, 1996, a grand jury returned an indictment charging the defendant, Jerail Carron Hardy, with the second-degree murder of Deville, a violation of La.R.S. 14:30.1. The defendant waived formal arraignment and pled not guilty in open court.
Following a jury trial on April 23-24, 1997, the defendant was found guilty of manslaughter, a violation of La.R.S. 14:31, when the jury returned a verdict eleven to one in favor of conviction for that crime. On May 30, 1997, the trial court sentenced the defendant to serve thirty-five years at hard labor without diminution of sentence for good behavior. Additionally, the trial judge stated that, as a first felony offender, the defendant is subject to parole eligibility. After imposition of sentence, the defendant filed in open court a Motion to Reconsider Sentence, which was subsequently denied by the trial court.
The defendant now appeals his conviction and sentence assigning the following as error:[1]
The trial court erred by overruling defendant's objection to the jury view of the crime scene not at the time when the crime was committed.
The trial court erred by not granting defendant's Motion for New Trial.
The trial court erred by imposing an illegal and excessive sentence of THIRTY-FIVE (35) years imprisonment without benefit of suspension of sentence, parole, and without good time.
The state failed to present sufficient evidence to prove beyond a reasonable doubt that the homicide was not justifiable and was not committed in selfdefense.
The trial court erred by refusing to instruct the jury that they could consider negligent homicide as a responsive verdict requiring a not guilty verdict if they found a reasonable view of the evidence supported no greater offense than negligent homicide.

DISCUSSION

Insufficiency of the Evidence
The defendant maintains that the evidence presented by the State is insufficient to support his conviction for manslaughter. In particular, the defendant asserts that the State failed to prove that the shooting death of Deville was not in self-defense. He contends that Deville was attempting to run over him with the vehicle and he, therefore, shot Deville in order to protect himself. In brief, the defendant combines this sufficiency argument with his assignment regarding the trial *717 court's denial of his Motion for New Trial. However, the defendant's argument is essentially a sufficiency argument, rather than an argument related to the Motion for New Trial.
Under Louisiana law, the fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La.R.S. 14:18. A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La.R.S. 14:20(1).
When a defendant in a homicide prosecution asserts that he acted in self-defense, he does not have any burden of proof on that issue. The State bears the burden of proving beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Patterson, 295 So.2d 792 (La.1974); State v. Carrier, 95-1003 (La.App. 3 Cir. 3/6/96); 670 So.2d 794, writ denied, 96-0881 (La.9/20/96); 679 So.2d 431; State v. Makar, 578 So.2d 564 (La.App. 3 Cir.1991). This court has characterized this burden of proof as a heavy one in which the State must "exclude every reasonable hypothesis of justification by self-defense." Makar, 578 So.2d at 569.
When a defendant claims on appeal that the State failed to prove a homicide was not committed in self-defense, the standard of review is that of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the homicide was not committed in self-defense. Makar, 578 So.2d 564.
The defendant relies on the State's introduction of his audio-taped confession to support his claim of self-defense. During the confession, the following exchange took place between the defendant and police officers:
Q: Okay. Jerail, we're talking about a shooting incident that happened around Turner and Wise Street on the 19th of September and we've already basically talked about it. I just want you to tell me again how you came in contact with this, this individual and what transpired from there?
A: The individual waswell, first I was coming from my house going to the corner to get a bicycle to go to the store crossing the street, and the guy he flew from coming real fast around Wise and stopped right here on the 
Q: On Turner Street?
A: On Turner Street partially toward the back. Ah, the guy then asked me to sell him a $20.00 rock, but I observed his window was already broken out.
Q: Which window on his car was broke out?
A: The back window, looked like.
Q: Okay.
A: I wasn't sure but it looked like the back window. Ah, I then bent down to sell the guyI had got the drug out my sock to sell it to him. When a defendant claims on appeal that the State failed to prove a homicide was not committed in self-defense, the standard of review is that of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the homicide was not committed in self-defense. Ah, when I gave it to him I bent back down to put it up and to pick up the weapon. And he told me, ah, he dropped it, so by the time I'm tucking my sock back down the guy done put the car in reverse and like turned the wheel and tried to back over me and then he threw it back in drive and tried to drive over me, you know, just try to run me down. So I then, not thinking, shot at the vehicle.
Q: You hadand you told me that you had the gun in your waistband or when you bent over to get the crack out of your sock, it fell out, is that right? You have to speak up now, yes or no? Did the weapon fall out? Jerail, did the weapon fall out of your waistband?
A: No. Really cause of (unintelligible)

*718 Q: Do you want us to stop the statement at this time?
A: Yes, sir.
In contradiction to the version of events related by the defendant, the State presented the testimony of two eyewitnesses to the shooting. Christopher Ross, thirteen years of age at the time of trial, testified that he and a group of friends were standing by the steps of his house on Wise Street on the night of September 19, 1996. At approximately 7:00 p.m., at which time it had grown dark, he saw a vehicle pull over and the defendant approach the vehicle on the passenger side. Ross stated that, after approximately five minutes, the car pulled away. According to the testimony of this witness, the defendant then walked to the rear of the departing vehicle and fired a single shot from a gun. Ross stated that the car then sped away leaving skid marks.
Despite Ross' testimony regarding the presence of speed marks, Officer Robert Strother and Detective Donald Weatherford of the Alexandria Police Department, testified that no skid marks were found at the scene. Ross stated that he did not see the defendant drop anything nor bend down to pick up anything at any point during the incident as related by the defendant in his statement. On cross-examination, Ross acknowledged that he was talking to his friends while the vehicle was stopped and did not maintain constant attention on the car. He also stated on cross-examination that he did not observe the vehicle's reverse lights being activated during the incident; however, investigators did not perform tests to determine whether the reverse lights of the victim's vehicle were operating correctly. Ross further testified that, after the shooting, the defendant approached him and asked to use his bicycle, which he allowed.[2]
John Green testified that, at the time of the shooting, he was visiting a friend who lived on Turner Street. Green stated that he and some other men were sitting on the front porch of the friend's house after dark when he observed a vehicle travel down Wise Street, take a right turn on Turner Street, and pull over. Green testified he saw a man, whom he identified at trial as the defendant, approach the stopped vehicle. Green stated that he looked away from the vehicle at that point, but looked back after he heard a gunshot. After hearing this gunshot, Green saw the vehicle drive away as the defendant walked away from the vehicle. Green stated that he did not observe the defendant fall down, drop anything, nor pick up anything. Green admitted that he did not maintain constant attention on the vehicle during the incident.
After Deville was shot, he apparently drove his vehicle to the corner of Overton and Schnack Streets where he lost control of the vehicle striking a nearby house. He later died as a result of the gunshot wound. The coroner who performed the autopsy testified that his testing revealed the presence of cocaine in Deville's system. Additionally, police authorities found drug paraphernalia in Deville's vehicle at the accident scene, including a crack pipe. According to State witness, T.J. Shuflin, director of the North Louisiana Crime Lab, a plastic film canister was also found at the scene containing a substance which appeared to be crack cocaine. However, the substance was analyzed and was not cocaine, but, rather, was a "fake" substance resembling crack cocaine.
According to Dr. George McCormick, the coroner performing the autopsy, Deville was shot once in the left chest area leaving a single bullet hole approximately four inches beneath his left armpit. McCormick testified that Deville's arm had to have been raised at the time he was shot, as the bullet did not pass through his arm. Dr. McCormick acknowledged this finding was consistent with the theory that Deville's left arm was on the steering wheel at the time he was shot.
According to the testimony of Detective William Bates of the Alexandria Police Department, his examination of Deville's automobile revealed that the bullet did not pass through the door of the vehicle. Additionally, Dr. McCormick opined that the shooting did not result in a "contact wound," as testing revealed an absence of gunpowder residue. Dr. McCormick stated that he did not *719 personally perform any analysis on Deville's shirt but relied upon the crime lab report which had stated that it did not contain gunpowder residue. Michael Stelly of the North Louisiana Crime Lab prepared the crime lab report and testified that the lack of residue on Deville's shirt signified that he was shot from a long distance. We note, however, that despite this testimony, the actual autopsy report prepared by Dr. McCormick stated that the distance between the shooter and Deville could not be determined at the time of the autopsy.
Prior to trial, police officers conducted a reconstruction of the crime. Testimony of the officers involved revealed that these reconstruction tests utilized measurements and missile path alignment of Dr. McCormick's schematic drawing contained in the autopsy report. In conducting the test, Michael Stelly, who was Deville's approximate size, was situated in the driver's seat of the victim's vehicle wearing a lab jacket with a red mark to signify the bullet's point of entry. Another officer who was the approximate height and size of the defendant stood at the driver's door of the vehicle and held a .25 caliber gun. A red string was threaded through the gun. During the experiment, the red string was extended from the gun to the vehicle and was connected to the red mark on the lab coat. As previously stated, trial testimony indicated that the bullet did not pass through the driver's door of the vehicle before entering the victim's body. Detective Bates testified to the following regarding the results of the testing:
In order to keep perfect missile path alignment in regards to Dr. McCormick's schematic drawing the suspect could not be no [sic] further than seven feet from the vehicle and approximately four foot four back from the point where the red string went across the door.
Photographs of the above-described reconstruction were presented to the jury. Although the rear window of the vehicle was broken out, similar tests were not performed from the rear of the vehicle to ascertain whether the victim could have been shot from the rear of the vehicle. On crossexamination by defense counsel, Detective Bates explained the absence of such tests, as follows:
Q. Do you know if the back window was in or out at the time of the shooting?
A. I think it was out.
....
Q. You didn't take any testsexperimental tests at all to determine whether or not that bullet came through the back of that car, did you officer?
A. No, ma'am, because I didn't see any bullet holes 
....
A. No, I did not because I didn't see a bullet hole in the back of the seat.
Q. Would it have made a difference officer if the seat were up or down whether or not a bullet could have gone through it?
A. I don't think it would.
Q. But then you don't know because you didn't do an experiment in that area did you sir?
A. No, ma'am.
Q. No tests at all done from the back window of the car?
A. No, ma'am.
In introducing these reconstruction tests, the State attempted to prove that the fatal shot was fired from the side rather than the rear of the vehicle. As previously noted, the defendant claimed in his statement to the police that he fired a shot at the vehicle after the victim attempted to drive over him. Although the results of the crime reconstruction do not clearly refute the self-defense claim, neither do they support the defendant's version of events. Furthermore, the State presented an eyewitness account of the incident which does clearly refute the defendant's statement given to police.
Christopher Ross testified that he saw the vehicle drive away, and then, as the vehicle was driving away, the defendant walked from the passenger side to the rear of the vehicle and fire the gun. Ross' testimony contradicted the defendant's assertion that he acted in self-defense. In State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, *720 93-2774 (La.1/13/94); 631 So.2d 1163, this court stated the following:
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1 Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand, 429 So.2d 1385 (La.1982). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. State v. Owens, 606 So.2d 876 (La.App. 2 Cir.1992).
Id. at 616. See also State v. Boswell, 96-801 (La.App. 3 Cir. 2/12/97); 689 So.2d 627; State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793. Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, Christopher Ross' testimony alone was sufficient to establish that the defendant did not act in self-defense. No internal contradictions existed with respect to Ross' testimony.
However, despite the lack of internal contradictions in Ross' testimony, his testimony was in conflict with the results of the State's crime reconstruction which alleged that the fatal shot was fired from the driver's side of the vehicle rather than the rear. However, we do not consider this reconstruction, and Detective Bates' opinion as to the results, physical evidence. Rather, the apparent conflict is more akin to a question of credibility. We conclude that the crime scene reconstruction evidence had no effect on the sufficiency of Ross' testimony, and the jury was free to accept or reject either theory. In sum, Ross' testimony alone was sufficient to refute the defendant's claim of self-defense.
Furthermore, in a case where self-defense is asserted, this court has previously found that a determination of guilt turns on a twofold inquiry: "(1) from the facts presented, could the defendant reasonably have believed his life to be in imminent danger; and (2) was deadly force necessary to prevent the danger?" Carrier, 95-1003, p. 7; 670 So.2d at 798. Even if the defendant's version of the facts was wholly accepted by the jury, the jury could have still properly concluded that the defendant's actions were not reasonable under the circumstances and therefore rejected his self-defense claim.
We conclude that the evidence presented in this case was sufficient for a reasonable trier of fact to have concluded that the defendant did not act in self-defense. Thus, this assignment lacks merit.
Jury Instruction
By this assignment, the defendant contends that the trial court erred by failing to instruct the jury as to negligent homicide and providing it as a responsive verdict. He maintains that the defendant's statement, which was introduced by the State, "supports a reasonable view of the evidence that the shooting was negligent homicide." La.Code Crim.P. art. 802(1) requires the court to instruct the jury as to the law applicable to the case. When properly requested to do so, the court is obligated to charge the jury as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Campbell, 94-1140 (La. App. 3 Cir. 3/13/96); 673 So.2d 1061, writ denied, 96-1785 (La.1/10/97); 685 So.2d 140, cert. granted, ___ U.S. ___, 118 S.Ct. 29, 138 L.Ed.2d 1059 (1997).
The defendant asserts that this case is similar to State v. Williams, 606 So.2d 1387, 1389 (La.App. 2 Cir.1992), after remand, 26,716 (La.App. 2 Cir. 5/10/95); 658 So.2d 703, writ denied, 95-2175 (La.2/2/96); 666 So.2d 1091, wherein the second circuit held:
Under LSA-C.Cr.P. Art. 814, negligent homicide is not a responsive verdict to second degree murder. However, in cases involving various grades of murder, such as first degree murder, second degree murder, or manslaughter, when there is evidence from which the jury can infer that the defendant is guilty of negligent homicide, the trial court should charge the jury *721 with the defendant's requested special charges on the law of negligent homicide. State v. Vergo, 594 So.2d 1360 (La.App. 2 Cir.1992); State v. Gray, 430 So.2d 1251 (La.App. 1st Cir.1983).
Although ultimately concluding that the lack of instruction on negligent homicide was reversible error, the proposition for which the case is cited by the defendant, the second circuit further concluded as follows:
Even if a negligent homicide instruction is indicated, the omission of such an instruction may be harmless error. The failure to give such an instruction is prejudicial only if the jury has insufficient information to understand that if the defendant was guilty only of negligent homicide, it should find him guilty of the charged offense. State v. Gray, supra; State v. Lloyd, 535 So.2d 885 (La.App. 2d Cir. 1988), writ granted in part on other grounds, 538 So.2d 584 (La.1989).
Id. at 1389-90.
In Campbell, 673 So.2d 1061, similar facts existed as those present in this case. The defendant claimed that he shot the victim because the victim tried to run over him with a vehicle. This court found no error in the trial court's failure to give the negligent homicide instruction, reasoning as follows:
The only evidence presented supporting the negligent homicide jury charge is Campbell's own self-serving testimony that Mr. Sharp allegedly tried to run him over with a van. We conclude that this testimony alone is not sufficient to provide the jurors with a reasonable basis from which to infer from the evidence that negligent homicide applies. Therefore, the trial court did not err in declining to give the requested jury charge on negligent homicide. Because we find no error, we necessarily do not reach the harmless error analysis.
Id. at p. 14; 1069.
In the present case, the trial court cited the Campbell decision in its reasons for denying the defendant's request that the negligent homicide instruction be given. We too find Campbell analogous to the instant matter. As in Campbell, the only evidence available to support a finding of negligent homicide was the defendant's own statement given to the police. Accordingly, we find no error in the trial court's refusal to instruct the jury as to negligent homicide.

Viewing of the Crime Scene
By this assignment, the defendant contends the trial court erred by allowing the jury to view the crime scene during daylight hours rather than at night. "Whether the jury is allowed to view the scene of the crime is a matter within the sound discretion of the trial court." State v. Johnson, 438 So.2d 1221, 1224 (La.App. 3 Cir.1983) citing State v. Gallow, 338 So.2d 920 (La.1976).
As he did at trial, the defendant, on appeal, does not object to the jury's viewing of the crime scene, but simply objects to the time of day during which the viewing took place. The defendant argues he was prejudiced because the crime was committed at night and the jury viewed the scene during the day. Specifically, he claims that "[d]aylight creates a false sense of security and serenity which is not present in the darkness" and part of his defense was based on "defendant's fear of being run over by Deville at night in a high crime area."
The State filed a Motion for Jurors to View the Crime Scene on the first day of trial. Defense counsel stated that she had no objections, and the trial court granted the motion. Thereafter, counsel inquired as to the particular time the viewing would take place, to which the court replied "we're just going to find out tomorrow whenever there's a break in the testimony to let them go look at the scene." Counsel responded "okay" and did not make an objection. On the following day, the court ordered that the jury would view the crime scene during a recess between 11:00 a.m. and 12:00 p.m., and defense counsel then expressed her objection to the particular time of the viewing. The trial court advised defense counsel that she should have raised the issue on the previous day. The following exchange transpired between the court and counsel:
BY THE COURT:
... the problem I have with that is we filed the motion yesterday you said you *722 had no objection, we could have done that last night.
BY MS. BROWN:
And I still don't.
BY THE COURT:
I understand. We could have done that last night if that's what you wanted to do and it's now timeit's 11:00 o'clock a little after 11:00 we have a break from 11:00 to 12:00 where we're going to take the jury.
We conclude that the defendant's objection was untimely. Furthermore, any prejudice to the defendant caused by the daytime viewing of the crime scene was slight. In a previous instruction from the judge, the jury was advised that the crime occurred at night, and was clearly aware of this point when it viewed the scene. Accordingly, we find that the trial court did not abuse its discretion, and thus this assignment is without merit.
Excessiveness of the Sentence
Finally, the defendant contends that the sentence imposed by the trial court is excessive. He asserts that only a mid-range sentence, rather than the thirty-five years at hard labor handed down, was warranted. In particular, he maintains that a lesser sentence was required as he was a first-time offender and the trial court incorrectly stated that the victim of the crime did nothing to facilitate/induce the commission of the crime. Rather, the defendant argues, Deville "caused the shooting by coming ... to purchase drugs and trying to run over defendant in his attempt to get away without paying for the drugs."
The crime of manslaughter carries a penalty of up to forty years at hard labor. La. R.S. 14:31(B). In the present matter, the defendant was sentenced to thirty-five years at hard labor without benefit of probation or suspension of sentence. Pursuant to La. Code Crim.P. art. 890.1, the trial court also denied the defendant good time eligibility based on his conviction for a crime of violence.
The fact that the defendant's sentence is within statutory guidelines does not, of course, indicate that the sentence cannot be excessive. This court has recently stated as follows:
To constitute an excessive sentence, this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
State v. King, 96-1303, p. 6-7 (La.App. 3 Cir. 4/2/97); 692 So.2d 1296,1300.
After hearing from both Deville's brother and the defendant's grandmother at the sentencing hearing, the trial judge made the following remarks:
The evidence presented by the State at this trial was that you were on a street in Alexandria on September 19, 1996 while you had concealed on your person a firearm. The victim in this matter, Mr. Robert Deville, drove up to your location apparently to purchase a rock of crack cocaine.
It is unclear what happened between you and Mr. Deville at that point in time because he is dead and the Court does not have benefit of your testimony. And so really I'm not clear exactly what happened at that point in time. However the evidence is clear that when he was in his car and he was drivingeither in his car or when he was driving off, one of the two, you produced your weapon and you shot him with one shot from your pistol.
The evidence revealed that when you shot your weapon you were some ten to fifteen feet away from the victim who was seated in his car and he did not pose any harm to you at that time. The evidence also revealed that you and the defendant had not known each other except minutes before the shooting; that the shooting was *723 arbitrary and there was nothing to indicate heat of passion even though you have suggested that your actions were motivated by a subjective fear on your part that your life was in danger because of words or actions of the defendant [sic].
The Court is unaware of any legal justification for your shooting and believes that the victim's actions did not justify a homicide. And believe that the reason for the homicide is that you were mad because he was driving off without paying for something that you may have exchanged. I don't know if that is true or not. That's what I was [led] to believe in the testimony in this case.
The Court also believes that this is not a typical manslaughter case but it is more akin to a second degree murder which you were originally charged with.
This excerpt from the sentencing hearing indicates that the trial court wholly rejected the defendant's version of the events and, instead, viewed the evidence as supporting a second-degree murder conviction. We conclude that this position renders meritless the defendant's contention regarding consideration of his self-defense claim.
Additionally, the trial court discussed other aggravating circumstances, such as the use of a firearm in the commission of the crime and the defendant's prior criminal history. As a juvenile, the defendant was adjudged a delinquent for possession of Schedule II controlled dangerous substance with intent to distribute and placed on probation in Louisiana. The defendant was also charged with a misdemeanor attempt to elude a police officer and several misdemeanor traffic violations in Georgia, for which a bench warrant was still pending. Since reaching the age of seventeen, the defendant had been charged with simple criminal property damage, on two separate occasions with simple battery (a total of three counts including two counts against a police officer), simple escape, and resisting an officer. The defendant was apparently also charged, but never adjudicated, with possession of marijuana, a misdemeanor, and possession of a Schedule II controlled dangerous substance. According to the pre-sentencing investigation, the defendant, as an adult, had one felony conviction for possession of a Schedule II controlled dangerous substance and one misdemeanor conviction for drug traffic loitering.
The trial court noted that the defendant had been "committing some type of criminal activity almost every three or four months." The trial court described the defendant as a "mean person who could care less about other people" and "incorrigible" and opined that the defendant "would never be a productive part of this society."
We conclude that, in light of the trial court's view of the evidence, and that court's consideration of previous offenses, the sentence of thirty-five years at hard labor is not a manifest abuse of discretion.

DECREE
For the foregoing reasons, the conviction and sentence of the defendant, Jerail Carron Hardy, are affirmed.
AFFIRMED.
NOTES
[1] We note that the defendant initially assigned various other errors as well as those listed. However, those assignments have been expressly abandoned.
[2] Diagrams were used throughout the trial to illustrate specific places where events occurred.